**INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL 429, Plaintiff–Appellant,**

v.

**TOSHIBA AMERICA, INC., Defendant–Appellee.**

No. 88–5318.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 1, 1988.

Decided July 7, 1989.

Rehearing and Rehearing En Banc Denied Aug. 25, 1989.

Othal Smith, Jr. (argued), Smith & Smith, Smith, Farrar, Cross, Beasley & Sir, Nashville, Tenn., for plaintiff-appellant.

Russell F. Morris, Jr. (argued), Karen L.C. Ellis, Bass, Berry & Sims, Nashville, Tenn., for defendant-appellee.

Before: KEITH and KRUPANSKY, Circuit Judges, and ZATKOFF,* District Judge.

ZATKOFF, District Judge.

This case involves a union dispute wherein five employees of the defendant-appellee Toshiba were discharged for participating in a wildcat strike. A grievance was filed regarding their discharge and the matter was referred to arbitration pursuant to the Collective Bargaining Agreement.

An impartial arbitrator ordered Toshiba to reinstate the five discharged employees. Toshiba, however, refused to comply with the arbitrator's decision. The five dis-

* The Honorable Lawrence P. Zatkoff, United States District Judge for the Eastern District of   Michigan, sitting by designation.

charged employees, through their union, filed a complaint in the United States District Court for the Middle District of Tennessee seeking enforcement of the arbitrator's award. Toshiba filed a complaint in state court seeking a court order denying enforcement of the arbitrator's award. The state court action was subsequently removed to the federal court and the two actions were consolidated.

The litigants filed cross-motions for summary judgment which were referred to a magistrate for consideration. The magistrate issued a Report and Recommendation granting summary judgment in favor of the union and denying summary judgment to Toshiba.

Toshiba filed objections to the magistrate's Report and Recommendation. The district judge entered an order on January 22, 1988, sustaining Toshiba's objections. As a result, the district court denied summary judgment in favor of the union and granted summary judgment in favor of Toshiba, thereby denying enforcement of the arbitrator's award. A motion for reconsideration was denied and the union timely filed its appeal to this court.

For the reasons stated below, we affirm.

### I.

On Thursday, August 1, 1985, 101 Toshiba employees staged a job walkout at Toshiba's Wilson County, Tennessee, facility. The Collective Bargaining Agreement between Toshiba and the employees' union contained a no-strike clause.

On Friday, August 2, 1985, all of the employees returned to work. On Monday, August 5, 1985, the following workday, all 101 of the employees who had engaged in the walkout were discharged. However, 96 of the discharged employees were rehired after accepting certain disciplinary conditions for reemployment, including a five-day suspension. The appellant union represents the five employees who were not rehired. Toshiba submits they were not rehired because they encouraged the walkout.

On August 7, 1985, a grievance was filed by the union on behalf of the discharged employees. The matter was submitted to an arbitrator for a determination of whether the employees were terminated for just cause.

In the arbitration proceedings the employees admitted they participated in a work walkout in violation of the no-strike clause of the Collective Bargaining Agreement. The arbitrator noted that because the employees violated the no-strike clause, Toshiba had the right to immediately discharge or discipline them pursuant to article 4, section 2 of the Collective Bargaining Agreement which provides that any "employees [who violate the no-strike clause] shall be subject to immediate discharge or discipline." Nonetheless, the arbitrator ordered the five employees reinstated.

The arbitrator found Toshiba orally agreed with union representatives not to discharge any employees engaged in the work walkout. The arbitrator found Toshiba made this agreement while negotiating an end to the work walkout. The arbitrator concluded the side oral agreement overrode the express provisions of the Collective Bargaining Agreement.

The district court refused to enforce the arbitration award because the arbitrator failed to construe or apply the Collective Bargaining Agreement and thus, acted outside the scope of his authority.

### II.

Arbitration as a means of dispute resolution is highly favored and courts have long refrained from involving themselves in the merits of an arbitration award. When the grievance procedure has been exhausted, the courts have nothing left to do but enforce the award. Courts are bound by the arbitrator's findings of fact and do not function as appellate courts or courts of review, but serve only to enforce the arbitrator's award. *See e.g. United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed. 2d 1424 (1960); *United Steelworkers of America v. American Manufacturing Co.,*

363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960).

The Supreme Court recently reexamined the role of the courts in enforcing arbitration awards in *United Paperworkers' International Union, AFL–CIO, et al v. Misco, Inc.*, 484 U.S. 29, 108 S.Ct. 364, 98 L.Ed.2d 286 (1988). In *Misco,* the Supreme Court stated:

> To resolve disputes about the application of a collective bargaining agreement, an arbitrator must find facts and a court may not reject those findings simply because it disagrees with them. The same is true of the arbitrator's interpretation of the contract. The arbitrator may not ignore the plain language of the contract; that the parties having authorized the arbitrator to give meaning to the language of the agreement, the court should not reject an award on the ground that the arbitrator misread the contract. (Citation omitted). . . .
>
> The arbitrator's award settling a dispute with respect to the interpretation or application of a labor agreement must draw its essence from the contract and cannot simply reflect the arbitrator's own brand of industrial justice. But as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision.

108 S.Ct. at 370–371.

The issue in this case is whether the district court erred in finding the arbitrator ignored the plain language of the contract. The district court placed great emphasis on article 6 of the Collective Bargaining Agreement. Article 6 defines grievance as:

> a difference between the union and/or employee(s) and the company about wages, hours of work, fringe benefits, or working conditions *within the terms of the agreement.* (Emphasis added.)

Article 6 further provides, in relevant part, that an arbitrator:

> shall have no authority to modify, amend, revise, add to or subtract from any of the terms and conditions of this agreement.

The district court also relied upon the provisions of article 4 of the Collective Bargaining Agreement. The union filed a grievance on behalf of the employees because they were discharged for encouraging and participating in an illegal strike specifically prohibited by the no-strike clause of the Collective Bargaining Agreement. Article 4 provides that an employee who participates in an illegal walkout: "shall be subject to immediate discharge or discipline." Most importantly, article 4, section 2(c) also provides:

> *Any disciplinary action, including discharge taken as a result of a violation of [the no-strike clause] . . . shall not be altered or amended in the grievance and arbitration procedures,* the sole issue for presentation to the arbitrator and decision by him being whether or not the employees engaged in conduct in violation of [the no-strike clause] without modification of the penalties imposed by the arbitrator and the award. (Emphasis added.)

Relying upon the above cited provisions of article 4, the district court held:

> The scope of arbitration permissible under article 4 is narrowly defined. The only issue for the arbitrator is whether a violation of the no-strike provision occurred. Any penalty imposed as a result of such a violation is not reviewable by the arbitration. In this case, the arbitrator did not have to rule as to whether a violation of the no-strike provision occurred. The union stipulated that there was an illegal walkout, or strike, on August 1, 1985, in violation of the collective bargaining agreement. Therefore, under the provisions of article 4, the arbitrator's only option was to uphold the discipline, in this case discharge, imposed by Toshiba.

We fully agree with the sound reasoning and conclusion of the district court. Once the union stipulated their employees engaged in an illegal walkout, the arbitrator was required to enforce the discharge of the employees. While we realize that great deference must be granted to the arbitrator's interpretation of the contract,

the arbitrator's action in this case amounts to a total disregard of the plain language of the contract.

For the above stated reasons, we affirm the district court's grant of summary judgment in favor of Toshiba.

KEITH, Circuit Judge, dissenting.

Had the arbitrator changed a punishment which was initially and consistently imposed by Toshiba, I would have no quarrel with the majority opinion.[1] Because the majority effectively holds that the arbitrator has no authority to hold Toshiba to the punishment Toshiba itself chose, I dissent.

The district court, and the majority, are entirely correct when they state that, once the union stipulated that an illegal strike occurred, article 4 of the agreement prohibits the arbitrator from modifying the penalty imposed. In the view of the majority, the "penalty imposed" was *discharge.* However, this conclusion ignores the fact that article 4 section (2)(a) differentiates between *discharge* and *discipline:*

Section 2. In the event of any violation or violations of the provisions of Section 1 of this Article by the Union, its members or representatives:

(a) Any such employee shall be subject to immediate discharge *or* discipline....

(Emphasis supplied). Moreover, article 10 section (1) reinforces the discipline/discharge dichotomy:

### Article X

### *Discipline and Discharge*

Section 1. The right to dismiss and maintain discipline among employees shall be the exclusive function of the Company, including the right to discipline, suspend *or* discharge employees, provided that an employee who has completed his probationary period shall be suspended, disciplined, *or* discharged only for just cause.

\* \* \* \* \* \*

(Emphasis supplied).

The majority treats the finding by the arbitrator that Toshiba agreed, during negotiations to end the strike, to impose discipline in the form of a five day suspension rather perfunctorily. However, it is precisely this fact which distinguishes the case before us from the one which the majority decides. In fact, Toshiba assessed a punishment—discipline—and it was the decision by *Toshiba* to *change* the assessed punishment of discipline to discharge which the arbitrator voided. Although Toshiba has the unilateral right to punish by discharge *or* discipline, I find absolutely no language in the agreement which permits Toshiba to change the punishment once assessed. Indeed, the most striking irony of this case is that it was *Toshiba* which "amended" the agreement, not the arbitrator. The arbitrator merely held Toshiba to the scope of Article 4, which allows Toshiba to assess discharge *or* discipline.

Moreover, it is simply not reasonable to conclude that even Toshiba believed that it had the power to change the punishment —a power which the majority gives it today. An example [differing from this case only in degree, and not in kind] will demonstrate the point. Suppose that Toshiba had sent notices to all of the strikers which read "Pursuant to Toshiba's rights under the agreement, all those involved in the illegal strike will be suspended for five days, beginning on Monday." On the subsequent Thursday, however, after the strikers had begun to serve their suspensions, suppose that Toshiba telephoned each of the strikers and told them that their pun-

---

1. I note, however, that the arbitrator's conclusions went beyond a finding that "the side oral agreement overrode the express provisions of the Collective Bargaining Agreement." *Supra* at 209. The arbitrator also specifically held, as discussed, *infra,* that:

Even granting that Mr. Tyree may not have issued an ironclad guarantee not to fire the five Grievants, he, by his own admission, stated that *discipline,* not *discharge,* would be discussed for all employees after they were gotten back in (back to work). Discharge is differentiated from discipline in Article IV by being separately denoted, and any ambiguity, if one may be said to exist, should be construed against the user. Also, Company witness testimony did not indicate that discharge, the Grievants' names, or the Stewards as such were ever mentioned in the discussions between Mr. Tyree and Mr. Reynolds.

ishment had been changed to discharge. According to the reasoning of the majority, an arbitrator would have no power to hold Toshiba to the penalty it initially imposed. It is inconceivable to me that either party negotiated article 4 with the notion that article 4 granted Toshiba the authority to change its mind at will as to the punishment for a violation of the no-strike clause, and the majority identifies no language, in article 4 or elsewhere, which would suggest otherwise.

In my view, the arbitrator acted with far more fidelity than Toshiba in upholding the integrity of the agreement. Far from merely "even arguably construing or applying the contract," *United Paperworkers' International Union, AFL–CIO v. Misco, Inc.*, 484 U.S. at ——, 108 S.Ct. at 371, his conclusions were firmly grounded in the agreement's language. Because the majority opinion, in ignoring the distinction between discipline and discharge, is not so firmly rooted, I dissent.