KAR NUT PRODUCTS COMPANY, Plaintiff,

v.

The INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, LOCAL NO. 337, Defendant.

No. 91–CV–74585–DT.

United States District Court, E.D. Michigan, S.D.

July 31, 1992.

Steven J. Fishman, The Fishman Group, Bloomfield Hills, Mich., for plaintiff.

George Geller, Farmington Hills, Mich., for defendant.

## MEMORANDUM OPINION AND ORDER

ZATKOFF, District Judge.

Plaintiff, Kar Nut Products Co. (the "Company"), filed this lawsuit under § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, and the provisions of the United States Arbitration Act, 9 U.S.C. § 1 *et seq.*, seeking to vacate an Arbitrator's award reinstating Simone Chapman (the "grievant") to her former position with the Company. Defendant, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local 337 (the "Union"), filed a counterclaim to enforce the arbitrator's award.

The action is presently before the Court on cross-motions for summary judgment. Each party has filed response briefs. Pursuant to E.D.Mich.Local R. 7.1(e)(2), the Court orders that the motions be submitted and determined on the briefs.

Because the Court finds that the Arbitrator's decision derives its essence from the express terms of the collective bargaining

agreement,[1] the Arbitrator's decision is affirmed. Accordingly, the Company's motion for summary judgment is denied, and the Union's motion for summary judgment is granted.

## I. FACTS

This dispute has its genesis in the termination of Simone Chapman (the "grievant") on August 31, 1991. The Company manufactures nuts for retail sale at various small business establishments, such as party stores and also supplies some large retailers, such as Meijer, Inc. The grievant was a packer at the Company's Ferndale, Michigan processing plant and is a member of the Union.

On the day of her termination, the grievant was working as a bulk line packager, a position that required the grievant to package, label, weigh, and move twenty-five pound boxes of nuts. After two hours of work, the grievant refused to return to her position in bulk line packaging. Her supervisor ordered her to return to her job, but the grievant refused.

The grievant asserted a number of excuses for not returning to her job: she did not understand her supervisor's instructions; she was injured and in pain; and pursuant to plant custom, as a female employee, she was required to work in bulk packaging for two hours, maximum (the so called "two hour" rule).

The grievant's supervisor suspended her for three days, pending an investigation into the incident. Later, the grievant was terminated for violating work rule 19, which states that "[r]efusal to follow orders or instructions of supervisor can result in immediate discharge."

The decision to terminate was motivated, at least in part, by the absence, in the Company's view, of any mitigating circumstances. Because the Company has the *option* of terminating an insubordinate employee under work rule 19, it is implied in the rule that the Company has the right to consider a multitude of factors—or mitigating circumstances—in exercising its discretion to terminate or to take other action. In this case, the Company believed that no mitigating circumstances justified the grievant's refusal to return to the bulk line packaging work, especially because no two hour rule existed under the collective bargaining agreement or under plant policy or custom. Furthermore, given the numerous warnings given to the grievant and the fact that an "obey now & grieve later" rule was in effect, the Company felt comfortable with its conclusion that no mitigating circumstances existed and in its subsequent decision to terminate.

Simone Chapman filed a grievance under the collective bargaining agreement, which channels all grievances into final and binding arbitration. After a *de novo* hearing, the arbitrator made the following findings: (1) the grievant unequivocally violated work rule 19; (2) the grievant did not suffer an injury justifying her refusal to obey her supervisor's order; (3) neither the collective bargaining agreement nor the work rules created or recognized a two hour rule; (4) there was no clear plant policy or custom of rotating female employees out of bulk line packaging after two hours (i.e., there was no two hour rule on an informal level); (5) even if a two hour rule did in fact exist—in the collective bargaining agreement or work rules, or as a plant policy or custom—the grievant was obligated to respect her supervisor's order and file a subsequent grievance (also referred to as the "obey now & grieve later" rule).

Despite these findings, on June 12, 1991, the arbitrator decided to reinstate the grievant with seniority, but without back pay and benefits. The arbitrator's decision was based on what he identified as two mitigating factors—specifically, the fact that the grievant, a permanent employee of eight months, had not been previously disciplined, and the grievant's "good faith" belief, from her perspective, that a two hour rule existed. The arbitrator found that this good faith belief arose from the

---

1. The now expired collective bargaining agreement covered the period from September 1, 1988 through August 31, 1991.

grievant's prior experience with a supervisor "who apparently applied the [two hour] rule" and the grievant's "belief about the two hour rule," the latter an apparent reference to the grievant's claim that a fellow employee told her about the two hour rule. This action followed.

## II. STANDARD OF REVIEW

The arbitrator's task was to determine if the Company's actions were justified under the terms of the collective bargaining agreement. This task necessarily involves some interpretation. And the Court must defer to such interpretation in many respects.[2]

In arbitration cases, the standard of review is often defined in the negative. The courts lack the authority to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on a misinterpretation of the collective bargaining agreement. *United ed Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 36, 108 S.Ct. 364, 369–70, 98 L.Ed.2d 286 (1987). The Supreme Court has also held that "[t]he courts . . . have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim." *Steelworkers v. American Mfg. Co.*, 363 U.S. 564, 567–68, 80 S.Ct. 1343, 1346, 4 L.Ed.2d 1403 (1960) (footnote omitted).

The standard of review has been further narrowed and limited. "Courts . . . do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts." *Misco*, 484 U.S. at 38, 108 S.Ct. at 370. Although the arbitrator may not ignore the plain language of the contract, the court cannot reject an award based on a misreading of the contract. *Id.* And, important in this case, "where it is contem-

plated that the arbitrator will determine remedies for contract violations that he finds, courts have no authority to disagree with his honest judgment in that respect." *Id.*

This Court's review of the arbitrator's decision is limited to determining whether the arbitrator's award "draws its essence from the collective bargaining agreement. . . ." *Id.* "An award fails to derive its essence from the collective bargaining agreement when it conflicts with the express terms of the agreement." *Ficks Reed Co. v. Local Union 112 of AFL–CIO*, 122 Lab.Cas. (CCH) P 10,198, 965 F.2d 123 (6th Cir.1992) (citing *Cement Divisions, Nat'l Gypsum Co. v. United Steelworkers of America*, 793 F.2d 759, 766 (6th Cir.1986)). An award cannot simply reflect the arbitrator's own notion of industrial justice. *Misco*, 484 U.S. at 38, 108 S.Ct. at 370–71. However, if the arbitrator even arguably construes or applies the contract and acts within the scope of his authority, the award must stand despite the court's conviction that a serious error was committed. *Id.*

## III. DISCUSSION

The Company argues that the arbitrator ignored the plain language of the collective bargaining agreement, which permits discharge for just cause, and imposed his own "notion of industrial justice." The Company also contends that because the arbitrator's decision is based on a clear factual error, the decision and award must be vacated. In this respect, the Company argues that the arbitrator's finding that work rule 19 was unilaterally imposed by the Company—that is, without the Union's consent—is a clear factual error.

The Union argues that the arbitrator's decision is firmly rooted in the language of the collective bargaining agreement. Specifically, the Union contends that "the em-

---

2. The Court's deference is a function of federal labor policies. Extensive and detailed judicial review of the arbitral process would undermine the goal of inexpensively and expeditiously resolving labor disputes. As the Supreme Court has noted, "federal [labor] statutes . . . reflect a

decided preference for private settlement of labor disputes without intervention of government[ ]. . . ." *United Paperworkers Int'l Union v. Misco, Inc.,* 484 U.S. 29, 37, 108 S.Ct. 364, 370, 98 L.Ed.2d 286 (1987).

ployer's right to fire under Rule 19 is limited by the 'just cause' standard, and is so limited by the very contract article empowering the employer to promulgate work rules...."

## A.

■ Article VII of the collective bargaining agreement allows the Company to discharge an employee for "just cause." Under Article XXII, the collective bargaining agreement also permits the Company to enact "reasonable" work rules defining "just cause" for termination.[3] Therefore, read as a whole, the collective bargaining agreement allows the Company to terminate an employee for violating a reasonable work rule.

The inclusion of the word "reasonable" creates a general limitation on the authority of the Company. The reasonableness component invites the arbitrator to make what is essentially a value laden judgment and suggests that the parties contemplated arbitration over the reasonableness of an entire rule, including not only the substantive provisions (i.e., what is and is not proper work conduct), but also the remedial provisions of the rule. In addition, the Supreme Court has noted that

> [A]n arbitrator is authorized to disagree with the sanction imposed for employee misconduct.... [The arbitrator] is to bring his informed judgment to bear in order to reach a fair solution to the prob-

lem.... *This is especially true when it comes to formulating remedies.*

*Misco,* 484 U.S. at 41, 108 S.Ct. at 372–73 (citation omitted).

As mentioned above, the arbitrator found that certain mitigating factors excused the grievant's conduct, thus making termination unreasonable. That decision (and the consequent award of reinstatement) arguably derives its essence from the reasonableness component of the just cause equation, which is clearly and unambiguously stated in the collective bargaining agreement. Given the very broad and general language in the collective bargaining agreement, the Court will not supplant the Arbitrator's judgment with its own.

■ Although the arbitrator maintains the right to fashion remedies, the parties may limit the arbitrator's discretion in the collective bargaining agreement. *Misco,* 484 U.S. at 41, 108 S.Ct. at 372–73. No such limitation exists here: under the collective bargaining agreement, a just cause inquiry requires the arbitrator to examine the reasonableness of termination. Nothing in the collective bargaining agreement prohibited the Arbitrator from considering the propriety of termination. There is no provision in the agreement restricting the Arbitrator's right to interpret the word "reasonable." Nor is there an express definition of the word "reasonable" in the agreement. There is no language in the collective bargaining agreement limiting the scope of the arbitrator's inquiry.[4] Sim-

---

3. The collective bargaining agreement states that "the Employer retains ... the right to establish ... *reasonable* work rules." (emphasis added). *See* Article XXII.

4. Owing to a sort of institutional reluctance created by an extremely deferential standard of review, the Sixth Circuit rarely vacates an arbitrator's award. However, where it is clear that the arbitrator's award contradicts the language of the collective bargaining agreement, *see e.g. Electrical Workers v. Toshiba America, Inc.,* 879 F.2d 208, 210–211 (6th Cir.1989) (affirming district court order vacating arbitrator's award), the Sixth Circuit shows no trepidation.

In *Toshiba,* the arbitrator had modified the employer's decision to terminate employees who had violated a no-strike clause in the agreement. The district court's decision to vacate the award was based on the clear and unequivocal

language in the collective bargaining agreement limiting the arbitrator's authority to modify disciplinary actions taken by the employer. The Sixth Circuit affirmed, stating that "[although] we realize that great deference must be granted to the arbitrator's interpretation of the contract, the arbitrator's action in this case amounts to a total disregard of the plain language of the contract." *Toshiba,* 879 F.2d at 210–211. *See also Ficks Reed Co. v. Local Union 112 of AFL–CIO,* 122 Lab.Cas. (CCH) P 10,198, 965 F.2d 123 (6th Cir.1992) (affirming district court's order vacating arbitrator's award because award contradicted language of the collective bargaining agreement).

As indicated above, no such limitation on the arbitrator's authority existed in this case; indeed, the language of the collective bargaining agreement obligated the arbitrator to review the reasonableness of the Company's decision to

ply put, the Court is unable to find a provision of the collective bargaining agreement that conflicts with the Arbitrator's decision.[5]

### B.

The Company contends that because it and the Union mutually agreed to adopt work rule 19, the rule is reasonable and the decision to terminate the grievant should be upheld. As a factual matter, the arbitrator found that the Union did not consent to work rule 19. Specifically, the Arbitrator found that "the rule at issue is employer promulgated...."

■ Generally, an arbitrator's factual finding will not be disturbed. *See Misco*, 484 U.S. at 36–39, 108 S.Ct. at 369–71; *Laborers v. U.S. Postal Service*, 751 F.2d 834 (6th Cir.1985) (arbitration awards are not to be upset based on review of disputed or ambiguous evidence). Although the Company acknowledges the general rule, it argues that an exception exists for "clear, objectively ascertainable mistake[s] of fact." *Laborers*, 751 F.2d at 843. The Company contends that the arbitrator erred in reaching and relying on the conclusion that work rule 19 was unilaterally imposed by the Company. The Company contends that the arbitrator relied on that finding to justify his review of the reasonableness of termination. According to the Company, the rule was the product of mutual agreement. Therefore, the Company urges the Court to find a clear error of fact and to vacate the arbitrator's award.

The Company presents two bases for its argument that the Arbitrator clearly erred in determining that work rule 19 was unilaterally, employer promulgated. First, the Company submits the affidavit testimony of the Company President, Bud Nicolay. Nicolay states that "the Work Rules, including Work Rule 19, were mutually agreed to between the Company and Local 337 of the [Union].... The Work Rules, including Work Rule 19, were not unilaterally promulgated and implemented by the Company." Second, the Company points to work rule two as evidence of mutual assent. Work rule two states that

> the Union agrees to uphold the mutually agreed to rules and regulations of the employer in regard to punctual and steady attendance, conduct on the job, work, safety, care of equipment and all other reasonable rules and regulations established by the employer and the Union.

In response to the Nicolay affidavit and work rule two, the Union submitted the affidavit of Coy Hill, a former business representative for the Union who was responsible for negotiating the collective bargaining agreement and work rules on behalf of the Union. In his affidavit, Coy states that work rule 19 was not the product of mutual agreement.

■ The Nicolay affidavit submitted by the Company does not establish that the Union assented to work rule nineteen. The Nicolay affidavit is opposed head on by the

---

terminate the grievant. Thus, the instant case is more akin to *Lattimer–Stevens Co. v. United Steelworkers*, 913 F.2d 1166 (6th Cir.1990), in which the Sixth Circuit affirmed a lower court order enforcing an arbitrator's award because the award "focused on the language in the [collective bargaining agreement]." 913 F.2d at 1168.

5. The Company relies on *Int'l Brotherhood of Fireman v. Nestle Co., Inc.*, 630 F.2d 474 (6th Cir.1980) to argue that the arbitrator exceeded his authority in modifying the remedy imposed. The Company's reliance on *Nestle* is misplaced. In *Nestle*, the Court found that the collective bargaining agreement expressly provided that insubordination was grounds for termination. The same is true of the collective bargaining

agreement here. However, the court further noted in *Nestle* that there was no provision in the collective bargaining agreement "giving the arbitrator power to prescribe the penalty for violation of the collective bargaining agreement or to control the exercise of it by the employer"—630 F.2d at 477—not the case here. In this case, the reasonableness component of the just cause equation allowed the arbitrator to review the appropriateness of the remedy in work rule 19.

Moreover, *Nestle*—a Sixth Circuit case—predates *Misco*—a Supreme Court case—by seven years. Because *Misco* narrowed the standard of review beyond that in *Nestle*, it is questionable whether a case like *Nestle* would be similarly decided today.

Coy affidavit. What Nicolay represents as true, Coy represents as false. At best, the affidavits present a genuine issue of fact.[6]

Work rule two does not evidence the Union's consent to be bound by work rule nineteen. Although work rule two imposes an obligation on the Union to respect all reasonable rules established by the Company and the Union, it does not evidence the Union's consent to be bound by any work rule. In fact, no Union acknowledgement or signature appears on the list of work rules provided by the Company.

Whether or not the parties mutually agreed to adopt work rule 19 is not determinative of the issue of reasonableness. Furthermore, there is no evidence that the arbitrator made a *clear* error of fact. Accordingly, pursuant to *Misco* and *Laborers v. U.S. Postal Service*, the Arbitrator's determination must not be disturbed.

## IV.

For all of the foregoing reasons, plaintiff-Kar Nut's motion for summary judgment is DENIED, and defendant-Union's motion is GRANTED.[7]

IT IS SO ORDERED.

---

6. Note that the Court finds a genuine issue of fact, but not a genuine issue of *material* fact. Materiality is lacking because even if the Arbitrator or the Court found that the Union clearly assented to work rule 19, it would not necessarily compel the conclusion that work rule 19 is reasonable. The Union's assent may be evidence—even strong evidence—of reasonableness, but under the agreement it is not determinative. The express provisions of the collective bargaining agreement do not set out a formula for determining reasonableness. Presumably, the Arbitrator's determination of reasonableness was informed by all of the facts and circumstances surrounding the case.

7. After a review of the arbitrator's opinion and award, the court file, and the applicable law, the Court concludes that the Company's claims were not frivolous. Accordingly, the union's request for sanctions is denied.