101 F.3d 702
 154 L.R.R.M. (BNA) 2352
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
NEWSPAPER DRIVERS AND HANDLERS' LOCAL UNION NO. 372,
Affiliated With the International Brotherhood of
Teamsters, AFL-CIO, Plaintiff-Appellant,
v.
The DETROIT NEWSPAPER AGENCY, Defendant-Appellee.
 No. 95-2025.
 United States Court of Appeals, Sixth Circuit.
 Nov. 20, 1996.
 
 Before: MARTIN, Chief Judge; CONTIE, Circuit Judge; and CARR, District Judge.*
 PER CURIAM.
 
 
 1
 Newspaper Drivers and Handlers' Union, Local 372, an affiliate of the International Brotherhood of Teamsters, appeals the district court's order affirming an arbitration award to the Detroit Newspaper Agency. The Union seeks to overturn an arbitration award on the grounds that the arbitrator acted outside the scope of the collective bargaining agreement.
 
 
 2
 Before his retirement, Daniel Mullan, a member of the Newspaper Drivers Union, filed a workers' compensation claim against the Detroit Newspaper group. Mullan later settled that claim by signing a Resignation and Waiver of Seniority and receiving payment of $66,500.00. By signing the release, Mullan waived his right to the retiree health insurance benefits provided by Section 37(a) of the collective bargaining agreement. Mullan presumably received a larger settlement than retirees who waited to settle their claims until after their retirement, when their health benefits had already vested.
 
 
 3
 After signing the waiver, Mullan initially advised the Workers' Compensation Board that he might withdraw from the settlement because of his concerns about the loss of health insurance. Upon further reflection and consultation with his attorneys, however, Mullan reaffirmed his acceptance of the settlement on January 14, 1993. One month later, Mullan filed a grievance against the newspapers claiming improper denial of his health benefits. Although Mullan retained the benefits of his workers' compensation settlement, he claimed that the newspapers wrongly denied him retiree health benefits by improperly categorizing him as a "deferred vested pension" employee. His grievance against the newspapers was submitted for final and binding arbitration in accord with the grievance procedure set forth in the collective bargaining agreement.
 
 
 4
 Before a jointly selected arbitrator, the Union made a three-pronged argument on Mullan's behalf. First, the Union submitted that an employer may not unilaterally extinguish collectively bargained benefits by entering into individual agreements with single employees. Second, it submitted that the bargaining history in its case supports the contention that a retiree is entitled to contractual benefits even where that individual has terminated employment prior to effectively retiring. Third, the Union argued that the past practices of the parties made it clear that individuals who terminate employment first and claim retiree health insurance second, still remain eligible for such benefits.
 
 
 5
 In response, the newspapers argued that the individual employees have always retained the power to decide whether to take a retiree medical benefit. The newspapers further submitted that Mullan was fully informed and advised of his rights and the fact that he would be waiving his right to retiree medical benefits. Finally, the newspapers suggested that if the arbitrator should find that Mullan did not voluntarily give up his rights that the remedy should only be an opportunity for Mullan to revoke his settlement and pay back the money he received in order to restore his eligibility for the benefits.
 
 
 6
 On October 10, 1994, the arbitrator dismissed Mullan's claim. The arbitrator found that although an individual settlement that alters bnefits covered in a collective bargaining agreement is not enforceable to the extent that it conflicts with the terms of the agreement, such a settlement is enforceable if a fully-informed employee negotiates for those terms. The arbitrator dismissed Mullan's claim as without merit because he concluded that: (1) Mullan was clearly informed by the newspapers that he would be waiving his health benefits by entering into the voluntary settlement agreement; (2) Mullan had an opportunity to discuss the matter fully with his Union; and (3) Mullan was fully represented and advised by counsel.
 
 
 7
 The Union then filed a complaint against the newspapers with the district court requesting that the court vacate and set aside the arbitrator's award. The Union claimed that the arbitrator's approval of the settlement exceeded his authority under Section 3(e) of the collective bargaining agreement because it altered, amended and modified the terms of that document by sanctioning a conflicting individual settlement. The parties filed cross-motions for summary judgment and, on August 31, 1995, the district court granted the newspapers' motion and denied the Union's motion.
 
 
 8
 Our review is de novo. EEOC v. Univ. of Detroit, 904 F.2d 331, 332 (6th Cir.1990). Summary judgment turns on whether there is no genuine issue as to any material fact and if the newspapers were entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1985). Here, we are mindful of the same constraints which bound the district court's review of the arbitrator's decision.
 
 
 9
 The district court was required to apply the narrowest standard of judicial review in reviewing the arbitrator's award. "[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." United Paper Workers Int'l Union, AFL-CIO v. Misco, Inc., 484 U.S. 29, 38 (1987). An arbitrator's award resting on his reading of a collective bargaining agreement should be vacated on judicial review only if the award fails to "draw its essence from" the contract. Id. Accordingly, we must determine whether the arbitrator exceeded the scope of his authority by crafting a fact-driven exception to Section 6 of the collective bargaining agreement.
 
 
 10
 Violation of Section 6 of the collective bargaining agreement appears to hinge on whether the newspapers could properly negotiate around the provision of collective health benefits in Section 37(a). Thus, the only issue facing the arbitrator was whether Section 37(a) was a non-negotiable condition of employment. In his award, the arbitrator determined that, Section 37(a) generally is a non-negotiable condition of employment. Under the arbitrator's interpretation of Section 37(a), however, the newspapers did not violate Section 6 of the collective bargaining agreement by entering into a settlement with Mullan because the arbitrator interpreted these facts as an exception to the general rule.
 
 
 11
 The arbitrator addressed the Union's three-pronged argument by way of discussing Section 6 and its underlying rationale. According to the arbitrator, Section 6, which prohibits the newspapers from individually negotiating with employees, was drafted to protect the Union's interests. As the exclusive bargaining agent for employees, the Union has an interest in full disclosure and participation in these matters. Bearing this purpose of Section 6 in mind, the arbitrator studied the facts of this case.
 
 
 12
 The arbitrator was struck by a great amount of evidence concerning Mullan's awareness of his rights under the collective bargaining agreement. Mullan was fully represented by legal counsel as he pursued a settlement with the newspapers. Mullan was also fully advised by the newspapers' agent of the rights that he was waiving. Mullan's awareness of those rights was evidenced in the record by his own statements and actions. The arbitrator also found that Mullan disclosed the proposed settlement to the Union and the Union impliedly consented to that arrangement. In the arbitrator's opinion, Mullan's knowing and voluntary waiver of his rights satisfied the goals of the collective bargaining agreement. To the arbitrator, Section 6 only exists to protect employees from exploitation by the newspapers. Permitting negotiation outside the contract under these facts, the arbitrator has fashioned an exception to the protective strictures of Section 6.
 
 
 13
 None of the arbitrator's factual findings were unreasonable, irrational or improvident. Rather, the arbitrator's award described clearly how the facts affected his resolution of the issues presented to him. As the district court correctly concluded, the arbitrator undertook all of the proper fact-finding and interpretive functions necessary to demonstrate that the award draws its essence from the parties' collective bargaining agreement.
 
 
 14
 The district court could not properly substitute its judgment because it disagreed with the arbitrator's interpretation of the collective bargaining agreement or grievance, nor could it determine whether the arbitrator misread the agreement. As long as the arbitrator's award drew its essence from the agreement the district court must enforce the award. Misco, 484 U.S. at 38 (1987). Likewise, we have limited authority to review the arbitrator's decision and we give deference to the arbitrator's interpretation of the collective bargaining agreement as a whole. See W.R. Grace and Co. v. Local Union 759, Int'l Union of United Rubber, Cork, Linoleum and Plastic Workers of America, 461 U.S. 757, 764 (1983).
 
 
 15
 The Union's assertions that the arbitrator amended, altered or modified the collective bargaining agreement and that the district court should, therefore, have vacated the award are short-sighted. Arbitrators routinely interpret and apply contract provisions so as to effect the intent thereof and promote justice between the parties. Here, the arbitrator concluded that Section 6 could not be read in isolation from the facts and the contract as a whole.
 
 
 16
 Judgment AFFIRMED.
 
 
 17
 CARR, District Judge, dissenting.
 
 
 18
 This case asks whether an arbitrator's award is inconsistent with the collective bargaining agreement and thus can be enforced by the court. The district court granted summary judgment for the employer and the union appealed. This Court has affirmed the finding of the district court. Although I understand and respect the analysis of my colleagues, I believe that we should not allow this exception to the consistent enforcement of collective bargaining agreements. Therefore, I dissent.
 
 
 19
 Section 6 of the collective bargaining agreement between the Detroit News Agency (DNA) and the Newspaper Drivers states: "The Agency [DNA] agrees not to enter into any agreements or contracts either individually or collectively with employees covered herein, which in any way conflict with the terms and provisions of this agreement." According to the Union, the arbitrator disregarded this provision and exceeded his own authority. I agree.
 
 
 20
 Courts have very limited power to review an arbitrator's decision. United Paper Workers v. MISCO, 484 U.S. 29 (1987). An arbitrator's decision must be enforced unless it does not "draw its essence from the collective bargaining agreement." W.R. Grace and Co. v. Local Union, 461 U.S. 757, 764 (1983). In Dallas v. Mavis Forwarding Co. v. Local Union 89, 972 F.2d 129, 134 (6th Cir.1992), the court stated that:
 
 
 21
 An award fails to derive its essence from the agreement when (1) it conflicts with express terms of the agreement; (2) it imposes additional requirements not expressly provided for in the agreement; (3) it is not rationally supported by or derived from the agreement; or (4) it is based on "general considerations of fairness and equity" instead of the exact terms of the agreement.
 
 
 22
 Despite that narrow standard of review, the arbitrator's award, in this case, should be overruled. The arbitrator impermissibly based his decision on "general considerations of fairness and equity" rather than the essence of the collective bargaining agreement. Though the arbitrator correctly stated that DNA could not enter independent agreements with employees, he allowed an exception. The arbitrator based this exception principally on the fact that Mullan consulted both the union and his attorney before waiving his right to benefits. As a result, in the arbitrator's view, the union impliedly consented to the agreement and, likewise, implicitly waived the prohibition against individual employer-employee agreements that are inconsistent with the collective bargaining agreement.
 
 
 23
 The arbitrator tried to avoid an apparently inequitable result. In the arbitrator's view, Mullan, with a favorable decision, would receive a windfall whereby he would have his cake (his health and welfare benefits under the collective bargaining agreement) and eat it too (by keeping the portion of the settlement award allotted for his waiver of benefits). Despite this inequity,[1] I am persuaded that relevant statute, case law, and the plain language of the collective bargaining agreement bars the employer-employee agreement in this case.
 
 
 24
 Section 9(a) of the National Labor relations Act, 29 U.S.C. § 159(a), mandates the exclusive relationship between union and employer. In relevant part,
 
 
 25
 Representatives designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes, shall be the exclusive representatives of all the employees in such unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment: Provided, That any individual employee or a group of employees shall have the right at any time to present grievances to their employer and to have such grievances adjusted, without the intervention of the bargaining representative, as long as the adjustment is not inconsistent with the terms of a collective-bargaining contract or agreement then in effect ...
 
 
 26
 (Emphasis added; italics in original).
 
 
 27
 Mullan's health benefits constitute a condition of employment and should be exclusively negotiated by the union.
 
 
 28
 The prohibition against individual agreements, as I understand the role of such provisions in the relationship between employer and union, upholds the collective bargaining process. NLRB v. Allis-Chalmers Manufacturing Company, 388 U.S. 175, 180 (1967) (national labor policy "extinguishes the individual employee's power to order his own relations with his employer and creates a power vested in the chosen representative to act in the interests of all employees"); Medo Photo S. Corp. v. NLRB, 321 U.S. 678, 687 (1944) (employer bound by collective bargaining agreement even when employees request separate agreement).
 
 
 29
 This provision ensures consistency in the implementation of collective bargaining agreements, which is a central tenet of labor law. Allis-Chalmers 388 U.S. at 180; Maushund v. Smith, Inc., 795 F.2d 589, 591 (6th Cir.1986); National Cash Register Company v. NLRB, 466 F.2d 945, 957 (6th Cir.1972). Individual agreements should only be allowed when they are consistent with the collective bargaining agreement. National Cash Register, 466 F.2d at 957 (inconsistent agreement not allowed). Accord, Bale v. General Telephone Co. of California, 795 F.2d 775 (9th Cir.1986); Malia v. RCA Corp., 794 F.2d 909 (3rd Cir.1986). A collective bargaining agreement supersedes individual agreements whether made prior to or during the term of employment. Melanson v. United Air Lines, Inc., 931 F.2d 558 (9th Cir.1991).
 
 
 30
 With regard to the importance of provisions such as that at issue here, one authority has stated:
 
 
 31
 To sum up the reasoning in the cases which outlaw bypassing the majority representative and bargaining with minority unions and individual employees, the central objections are these. (1) The statute [section 9(a) of the National Labor Relations Act, 29 U.S.C. § 159(a) ] requires bargaining with the majority representative, and "bypassing" demonstrates a repudiation of the principle of collective bargaining and of the bargaining agent itself; it demonstrates as well that the employer is prepared to grant benefits even without the union and thereby undermines employee support for the elected representative. (2) Congress intended to substitute the strength of the collectivity for the weakness of the individual bargainor. Individual bargaining permits the employer to combat the progressive improvement in wages and working conditions that come more readily from an integrated group effort. (3) Bargaining on a pluralistic basis, with each individual or group speaking for itself, generates a severe risk of employer domination and interference, of divisiveness and inequality of working conditions within the plant, and of economic strife--all of which undermine the fundamental congressional objective of stabilizing industrial relations and minimizing disruptions in interstate commerce. (4) Congress gave to the majority representative the task of harmonizing and adjusting the conflicting interests of employees within the bargaining unit, not matter how diverse their skills, experience, age, race or economic level. The employer improperly usurps that function for itself--and of necessity undermines the position of the union in contract negotiation and enforcement--when it seeks to set working conditions with individuals and minority organizations within the plant.
 
 
 32
 Robert A. Gorman, Basic Text on Labor Law: Unionization and Collective Bargaining 379 (West Pub. Co. 1976).
 
 
 33
 In addition, though not apparently a factor in this case, a lax approach to such agreements would enable the union to "play favorites" by agreeing to some waivers and not agreeing to others. With consistent application of collective bargaining agreement rules, there can be no disparity of representation through side agreements.
 
 
 34
 In any event, I find support for my opposition to allowing the union to consent by acquiescence in the plaintiff's agreement with DNA in this Court's decision in International Brotherhood of Electrical Workers, Local 429 v. Toshiba America, Inc., 879 F.2d 208 (6th Cir.1989). In that case, the collective bargaining agreement allowed immediate dismissal of anyone who violated a no strike clause. The arbitrator ordered the reinstatement of five workers who violated that clause. He based his decision, in part, on the employer's oral assurance, made during negotiations to end the strike, that it would not dismiss any employees involved in the walkout. The district court concluded and the Sixth Circuit affirmed that the arbitrator failed to apply the collective bargaining agreement by relying on the employer's apparent consent. Id. at 210.
 
 
 35
 The Ninth Circuit reached the same result in DeLapp v. Continental Can Co., Inc., 868 F.2d 1073 (9th Cir.1989), in which the employer successfully used the collective bargaining agreement as a defense against an employee trying to enforce an individual agreement. The employer had agreed orally to give the plaintiff retirement benefits when he was laid off; it rescinded commitment, however, after it called the plaintiff back to work at a different facility. Despite the company's prior consent to the individual agreement, the Ninth Circuit held that the collective bargaining agreement prevailed. I am persuaded in this case that the union's implied consent should no more be a defense to repudiation of its individual agreement than was the express consent of the employers in Toshiba and DeLapp.[2]
 
 
 36
 Despite the bar against private agreements, the arbitrator carved an exception to the rule and allowed a private agreement between Mullan and the DNA to conflict with the collective bargaining agreement, (i.e., waive vested retiree health benefits). The arbitrator violated his authority under section 3(e) of the collective bargaining agreement which prohibits the arbitrator from "altering, amending, modifying, adding to or subtracting from" any collective bargaining agreement provision. By relying on the union's implied consent, the arbitrator added to the collective bargaining agreement, and by allowing such implied consent to override the conventional requirements of the collective bargaining process, he amended the contract.
 
 
 37
 I conclude, therefore, that the arbitrator did more than merely interpret and apply the collective bargaining agreement--he impermissibly added his own terms in the name of equity. In light of Dallas and Mavis, supra, I believe that the arbitrator's decision should not be enforced.
 
 
 38
 Most respectfully, I, therefore, dissent from the decision of the majority.
 
 
 
 *
 The Honorable James G. Carr, United States District Judge for the Northern District of Ohio, sitting by designation
 
 
 [1]
 The resulting inequity could, I suggest, be avoided by requiring Mullan to repay his award, receive his retiree benefits, if any, and pursue his Workers' Compensation claim. This would restore the status quo ante to the extent possible
 To be sure, this approach would disregard any precondition to judicial relief that has been imposed increasingly in other cases--namely, a return of the proceeds of the settlement agreement as the price of rescission. See Wittorf v. Shell Oil Co., 37 F.3d 1151, 1154 (5th Cir.1994). This issue was not raised by DNA, and thus that doctrine, even if it were otherwise applicable, would not bar the result that I believe should be reached in this case.
 
 
 [2]
 To the extent that the parties to a collective bargaining agreement can waive one of the contract's terms, such waiver must be "clear and unmistakable." General Motors Corp. v. NLRB, 700 F.2d 1083, 1091 (6th Cir.1983); Murphy Diesel Company v. NLRB, 454 F.2d 303, 307 (7th Cir.1971); General Electric Co. v. NLRB, 414 F.2d 918, 923 (4th Cir.1969). In this case, the union's waiver was, at most, implicit, rather than express and "clear and unmistakable."