**The LATTIMER–STEVENS COMPANY, Plaintiff–Appellant,**

v.

**The UNITED STEELWORKERS OF AMERICA, AFL–CIO, DISTRICT 27, SUB–DISTRICT 5, Defendant–Appellee.**

**No. 88–4015.**

United States Court of Appeals, Sixth Circuit.

Argued Oct. 12, 1989.

Decided Sept. 13, 1990.

David Goldman (argued), Rudolph L. Milasich, Pittsburgh, Pa., Stewart R. Jaffy, Stewart & Jaffy, Columbus, Ohio, for defendant-appellee.

Before: MARTIN and BOGGS, Circuit Judges, and ZATKOFF, District Judge.*

ZATKOFF, District Judge.

Plaintiff-appellant Lattimer–Stevens Company (hereinafter "Company") appeals from the summary judgment of the district court in favor of defendant-appellee United Steelworkers of America, AFL–CIO (hereinafter "Union"). In granting the summary judgment, the district court affirmed an arbitrator's decision in favor of the Union. For the reasons that follow, we affirm.

The Company and the Union entered into a three-year Collective Bargaining Agreement (hereinafter "CBA") effective September 12, 1984. The CBA had a broad grievance procedure that culminated in binding arbitration. Following the execution of the 1984 CBA, a member of the Union employed by the Company filed a grievance raising an issue of contract interpretation concerning a longevity pay increase provided for in the contract. That grievance was eventually submitted to arbitration, and the arbitrator issued an Opinion and Award on January 30, 1986 resolving the matter in favor of the Union.

The dispute in this case concerns the arbitrator's interpretation of Article XXIV of the 1984 CBA, which reads as follows:

> In addition to the pay increases described herein, all Tier 1 employees shall receive a longevity increase of 15¢ per hour, payable as follows: Tier 1 employees who have been employed by the Company for more than three years as of September 12, 1984, shall receive said longevity increase on the first anniversary date of their employment following the effective date of this contract. Tier 1 employees who have been employed by the Company for less than three years as of the effective date of this contract,

J. Michael Cooper (argued), W. Eugene Rutledge & Associates, Birmingham, Ala., for plaintiff-appellant.

* The Honorable Lawrence P. Zatkoff, United States District Judge for the Eastern District of Michigan, sitting by designation.

longevity increases shall be payable on the anniversary date of their employment when they have been employed by the Company for three years.

According to the arbitrator's Opinion and Award, "the issue for the arbitrator to decide was the interpretation of [Article XXIV] as to when longevity wage increases are to be paid." The arbitrator determined that Article XXIV, quoted above, called for annual longevity wage increases of 15¢ per hour for those employees who had been employed by the Company for more than three years. In making this decision, the arbitrator noted that the CBA, as adopted in 1975, contained a significant difference in contractual language that expressly limited longevity increases to triennial payments. The language of the 1975 CBA was as follows:

> In addition to the pay increases described herein, all employees shall receive a longevity increase of 12¢ per hour, payable as follows: employees who have been employed by the Company for more than three years as of April 1, 1975, shall receive said longevity increase on the first anniversary date of their employment following the effective date of this contract, *and shall receive a longevity increase thereafter, at three year intervals*. For employees who have been employed by the Company for less than three years as of the effective date of this contract, longevity increases shall be payable on the anniversary date of their employment when they have been employed by the Company for three years. *Thereafter, such employees shall receive longevity increases at three year intervals*.

The arbitrator further noted that collective bargaining resulted in a new CBA in 1978, in which the above-underscored passages were deleted. The CBAs between the Company and the Union in 1978 and 1981 contained language on longevity increases that was virtually identical to that in the 1984 CBA.

The arbitrator found that after the adoption of the 1984 CBA, the Union "recognized then that the language specifically called for annual increases, whereby over the past eight years, the increase had been paid in three-year intervals." The Company insisted that it was required to pay longevity increases only at three-year intervals.

The arbitrator concluded that the contract language unambiguously called for annual pay increases. The fact that the parties to the contract had not insisted upon such performance previously did not preclude the Union from insisting that the 1984 contract language required the Company to act differently than it had in the past. The arbitrator, therefore, sustained the grievance of the Union and directed that Article XXIV be applied and enforced according to its terms, retroactive to September 12, 1984.

The Company advances a number of arguments for vacating the arbitrator's opinion and award. First, the Company contends that the arbitrator's award has no rational relation to the language of the CBA or to the CBA as construed by prior shop practice. The Company also argues that the arbitrator improperly found that the existence of annual longevity increases was an "undisputed fact." Finally, the Company argues that the arbitrator's award should be vacated because the arbitrator decided a matter not submitted to him. We find that all of these arguments are without merit.

### A.

As pointed out by this Court in *International Brotherhood of Electrical Workers, Local 429 v. Toshiba America, Inc.*, 879 F.2d 208 (6th Cir.1989):

> Arbitration as a means of dispute resolution is highly favored and courts have long refrained from involving themselves in the merits of an arbitration award. When the grievance procedure has been exhausted, the courts have nothing left to do but enforce the award. Courts are bound by the arbitrator's findings of fact and do not function as appellate courts

or courts of review, but serve only to enforce the arbitrator's award.

*Id.* at 209 (citations omitted).

When courts are called on to review an arbitrator's decision, the review is very narrow; one of the narrowest standards of judicial review in all of American jurisprudence.

> The question of interpretation of the collective bargaining agreement is a question for the arbitrator. It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his.

*United Steelworkers v. Enterprise Wheel & Car. Corp.*, 363 U.S. 593, 599, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

The Supreme Court reexamined the role of the courts in enforcing arbitration awards in *United Paperworkers' Int'l Union v. Misco, Inc.*, 484 U.S. 29, 108 S.Ct. 364, 98 L.Ed.2d 286 (1988). In *Misco*, the Supreme Court stated:

> To resolve disputes about the application of a collective bargaining agreement, an arbitrator must find facts and a court may not reject those findings simply because it disagrees with them. The same is true of the arbitrator's interpretation of the contract. The arbitrator may not ignore the plain language of the contract; but the parties having authorized the arbitrator to give meaning to the language of the agreement, the court should not reject an award on the ground that the arbitrator misread the contract. (Citation omitted)....
>
> The arbitrator's award settling a dispute with respect to the interpretation or application of a labor agreement must draw its essence from the contract and cannot simply reflect the arbitrator's own notions of industrial justice. But as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious

error does not suffice to overturn his decision.

108 S.Ct. at 370–71.

■ We agree with the district court that the arbitrator's decision in this case is immune from judicial review. The arbitrator clearly focused on the language of the CBA in interpreting Article XXIV. His decision was rational and was made in regard to the language in the CBA. *See e.g. National Post Office, Mailhandlers, Watchman, Messengers, and Group Leaders Division, Laborers Int'l Union of North America v. U.S. Postal Services*, 751 F.2d 834, 840 (6th Cir.1985). There is no indication that the arbitrator disregarded unambiguous terms in the contract. The arbitrator's decision, therefore, draws its essence from the CBA.

At oral argument, counsel for the Union raised the case of *Electrical Workers, Local 429 v. Toshiba America, Inc., supra*, decided by this Court on July 7, 1989. He raised the case in order to point out that it is factually distinguishable from the case at bar. In *Electrical Workers*, we held that the arbitrator's action amounted to a total disregard of the plain language of the contract. In that case, five employees of Toshiba were discharged for participating in a wildcat strike. The arbitrator ordered Toshiba to reinstate the five discharged employees. In making his decision, the arbitrator noted that because the employees violated the no-strike clause of the CBA, Toshiba had the right to immediately discharge or discipline them pursuant to article 4, section 2 of the CBA. Nonetheless, the arbitrator ordered the five employees reinstated.

In the *Electrical Workers* case, article 4, section 2 of the CBA clearly provided that the sole issue for the arbitrator was whether or not the employees had engaged in conduct in violation of the no-strike clause. Any disciplinary action, including discharge, could not be amended by the arbitrator. Therefore, once the Union stipulated that their employees engaged in an illegal walkout, the arbitrator was required to enforce the discharge of the employees. Instead, the arbitrator ignored the plain

language of the agreement and ordered the five employees reinstated.

In this case, unlike *Electrical Workers,* the arbitrator's decision is not in direct contradiction of unambiguous terms of the agreement. Furthermore, it cannot be said that the arbitrator refused to apply explicit terms of the agreement or ignored the agreement in reaching his decision.

In addition to arguing that the arbitrator's award is not rationally related to the language of the agreement, the Company contends that the arbitrator improperly disregarded the past practice of the parties under identically worded agreements. As the district court correctly noted, this argument must also fail. The arbitrator may consider prior shop practice as evidenced by the parties' past conduct, but he is not bound by such practice. The arbitrator in this case clearly considered the prior practice of the parties, but found that the language of the agreement was determinative of the issues before him.

### B.

The Company asserts that the logic of the arbitrator's award is faulty because he described the annual nature of the longevity increases as an "undisputed fact." As the district court again correctly found a fair reading of the arbitrator's opinion and award as a whole, obviously shows that the arbitrator concluded the contract required annual longevity increases only after he considered the language of the agreement and the conflicting positions of the parties. The fact that he described annual longevity increases as an "undisputed fact" is thus irrelevant.

### C.

■ The Company's final argument is that the arbitrator's award should be vacated because the arbitrator ruled on an issue that was not submitted to him. The Company claims that the only issue submitted to the arbitrator was when the *one* longevity increase was to be paid, and thus an award of more than one longevity increase during the term of the CBA was beyond

the limits of the issue submitted to arbitration.

As we stated in *Champion International Corp. v. United Paperworkers International Union,* 779 F.2d 328 (6th Cir.1985), "the extraordinary deference given to an arbitrator's ultimate decision on the merits applies equally to an arbitrator's decision that the parties have indeed submitted a particular issue for arbitration." *Id.* at 335. Upon a review of the evidence in this case, it is clear that the arbitrator properly determined that he was to interpret Article XXIV, without being restricted to awarding only one longevity increase.

Accordingly, judgment in favor of United Steelworkers of America, AFL–CIO is hereby affirmed.

BOYCE F. MARTIN, Jr., Circuit Judge, concurring.

I agree with Judge Boggs that the review of arbitration decisions is a standardless enterprise. Unfortunately, I disagree with Judge Boggs on the conclusion he reaches in this case. I feel that Judge Zatkoff has in his majority opinion reached a conclusion which is supported by the facts in the record and the law which he has applied. I therefore join with Judge Zatkoff in the majority decision in this case.

BOGGS, Circuit Judge, dissenting.

Review of arbitration decisions is one of the more difficult and standardless enterprises facing an appellate judge. The basic statements of the rules for such review seem quite definitive:

> It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him *because their interpretation of the contract is different from his.*

*United Steelworkers v. Enterprise Wheel & Car. Corp.,* 363 U.S. 593, 599, 80 S.Ct. 1358, 1362, 4 L.Ed.2d 1424 (1960) (emphasis added).

> [A]s long as the arbitrator *is even arguably construing or applying the con-*

*tract* and acting within the scope of his authority, that a court is convinced [the arbitrator] committed serious error does not suffice to overturn his decision.

*United Paperworkers Int'l Union v. Misco, Inc.,* 484 U.S. 29, 38, 108 S.Ct. 364, 371, 98 L.Ed.2d 286 (1987) (emphasis added).

> The *arbitrator may not ignore the plain language of the contract;* but the parties having authorized the arbitrator to give meaning to the language of the agreement, a court *should not reject an award on the ground that the arbitrator misread the contract. Enterprise Wheel, supra,* 363 U.S. at 599, 80 S.Ct. at 1362.

*Ibid.* (emphasis added).

Nevertheless, the National Labor Relations Act, 29 U.S.C. 185(a), does provide an avenue for review of labor arbitration decisions in federal court. That review is not an inevitable concomitant of the process of arbitration, and if that right is to be taken seriously, there must be some content to it, some line beyond which an arbitration decision will not be upheld.

Prior to *Misco,* the rule seemed to be "the arbitrator is always right." After *Misco,* the rule would seem to be "even when the arbitrator is wrong, he's still right." Since *Misco,* our circuit has only overturned one arbitration award by published decision. *IBEW Local 429 v. Toshiba America, Inc.,* 879 F.2d 208 (6th Cir. 1989). Other circuits have been only slightly more generous.[1] The rationale in *Toshiba* was that the arbitrator's decision flew directly in the face of an explicit prohibition on his entering a certain area. The court in this case states that in *Toshiba* there was "a total disregard of the plain language of the contract" (p. 1169, citing 879 F.2d at 211), while in our case the interpretation was not "in direct contradiction of unambiguous terms of the agreement."

One does not have to be a complete devotee of the Critical Legal Studies school to believe that there are degrees of ambiguity and clarity in most language. *See, e.g.,* D'Amato, *Aspects of Deconstruction,* 84 Nw.U.L.Rev. 250 (1989). It seems to me that if a reviewing judge is firmly of the opinion that the arbitrator's result cannot "in some rational manner be derived from the agreement" putatively interpreted, then the results should be overturned, within the degree of latitude given to reviewing courts. *Amoco Oil Co. v. Oil, Chem. & Atomic Workers Int'l Union,* 548 F.2d 1288, 1294 (7th Cir.), *cert. denied,* 431 U.S. 905, 97 S.Ct. 1697, 52 L.Ed.2d 389 (1977). While this test also suffers from a considerable degree of ambiguity, to abdicate even further than this would be to make the supposed power of review a nullity, so long as the arbitrator has the wit to point to some language in the contract as supposedly supporting his decision.

A number of appellate courts, while overturning arbitrators' decisions, have tried to clarify the *Misco* standard to some degree by language indicating that appellate courts should step in only when the arbitrators have gone completely outside any conceivable interpretation of the contract. The First Circuit in *Georgia–Pacific Corp. v. Local 27, United Paperworkers Int'l Union* said, in overturning an award, that the arbitrator "... cannot be said to be 'even arguably construing or applying the contract....'" 864 F.2d 940, 945 (1st Cir. 1988), *quoting Misco,* 484 U.S. at 38, 108 S.Ct. at 371. The Second Circuit in *In re Marine Pollution,* 857 F.2d 91, 94 (2d Cir. 1988), said the arbitrator would have been upheld if he explained his reasoning "in terms that offer even a barely colorable justification for the outcome reached," but it quoted with approval the Seventh Circuit in *Ethyl Corp. v. United Steelworkers,* 768

---

1. Through July 1, 1990, other federal circuit courts citing *Misco* have overturned arbitration awards in only six cases where the district court has not done so. *Challenger Caribbean Corp. v. Union General de Trabajadores,* 903 F.2d 857 (1st Cir.1990); *Georgia–Pacific Corp. v. Local 27, United Paperworkers Int'l Union,* 864 F.2d 940 (1st Cir.1988); *S.D. Warren Co. v. United Paper-* *workers' Int'l Union,* 845 F.2d 3 (1st Cir.), *cert. denied,* 488 U.S. 992, 109 S.Ct. 555, 102 L.Ed.2d 582 (1988); *In re Marine Pollution Service, Inc.,* 857 F.2d 91 (2d Cir.1988); *George A. Hormel & Co. v. United Food & Commercial Workers,* 879 F.2d 347 (8th Cir.1989); *Inter–City Gas Corp. v. Boise Cascade Corp.,* 845 F.2d 184 (8th Cir.1988).

F.2d 180, 187 (7th Cir.1985), *cert. denied,* 475 U.S. 1010, 106 S.Ct. 1184, 89 L.Ed.2d 300 (1986), stating that there was a limit to the deference afforded an arbitrator's decision, and the arbitrator could not simply be "making the right noises."

In *Toshiba,* this circuit reversed an arbitrator's decision because his action amounted to "a total disregard of the plain language of the contract." 879 F.2d at 21. In addition, our circuit, in an unpublished decision, rested its ruling that an arbitrator's award did not draw its essence from the collective bargaining agreement on the fact that "[t]here is no rational basis for this finding by the arbitrator." *United Textile Workers of America v. BASF C .rp.,* 900 F.2d 261 (6th Cir.1990). The Eighth Circuit in *George A. Hormel & Co. v. United Food & Commercial Workers,* 879 F.2d 347, 350 (8th Cir.1989), stated that "... this court has vacated awards where the award's result is one so contrary to common experience and logic that it is more likely than not that such result was not the intent of the parties...."

The language of the contract in our case states that all employees "shall receive *a* longevity increase," implying a single increase. The contract goes on to state that employees of *more* than three years' standing "shall receive *said* longevity increase on *the first* anniversary date of their employment following the effective date of this contract." (Emphasis added). It seems difficult to believe that even a convocation of grammarians and law professors could make it any clearer that only one increase was contemplated at some point during the contract period.

The next statement, covering employees with *less* than three years of service, provides slightly more latitude (obtained primarily through poor diction and grammar) and, were it standing alone, would probably justify the arbitrator's ruling. That sentence fragment (it is not a grammatical sentence) reads, with regard to such employees:

> [E]mployees who have been employed by the Company for less than three years as of the effective date of this contract, longevity *increases* shall be payable on the *anniversary date* of their employ-

ment when they have been employed by the Company for three years. (Emphasis added).

For this string of words, artful interpretation could argue that increase*s* implies more than one and that "the anniversary date of their employment when they have been employed by the Company for three years" could refer to more than one date, specifically the third, fourth, fifth, etc. anniversary of the employment date. It would make no sense at all to award an employee with 2½ years of service at the signing of the contract longevity increases on the third, fourth, and fifth anniversaries, while the employee with 3½ years would receive it on his fourth anniversary and no more. However, such a ruling would at least have some faint, though strained, relationship to the words of the contract.

In our case, that is not what the arbitrator did. Since I am completely unable to see how either I or any rational reader could interpret "first anniversary date" as meaning first, second and third anniversary dates, I would hold that the arbitrator did "ignore the plain language of the contract," and was not "even arguably construing or applying the contract." Even under *Misco,* that is enough to reverse an arbitrator's decision. Since the court fails to do so, I must respectfully dissent.