MARIANNE O. BATTANI, United States District Judge *1139 I. INTRODUCTION
The Plaintiff Postal Police Officers Association commenced this action in this Court on May 8, 2018, seeking to confirm and enforce a pair of arbitration awards through which arbitrator E. Frank Cornelius ordered the Defendant United States Postal Service to reinstate Postal Police Officer ("PPO") Geoff Bailey and to cease and desist from efforts to avoid complying with the arbitrator's reinstatement order. The Plaintiff labor organization seeks this relief under the Postal Reorganization Act ("PRA"), 39 U.S.C. § 1208(b), and section 9 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 9. Defendant has asserted a counterclaim to vacate portions of the two arbitration awards, alleging that the arbitrator acted outside his authority in issuing these awards.
Two motions presently are pending before the Court. First, Plaintiff seeks an order confirming the arbitration awards and dismissing Defendant's counterclaim. In support of its motion, Plaintiff observes that the collective bargaining agreement ("CBA") between the Plaintiff labor organization and Defendant provides for binding arbitration of employee grievances and for discharge only for just cause, and it contends that the arbitrator plainly acted pursuant to the broad authority conferred under the CBA when he determined that the discharge of PPO Bailey was excessive, and that this officer instead should be suspended without pay for a year. Plaintiff further asserts that when Defendant responded to the arbitrator's initial award by revoking PPO Bailey's security clearance - a decision that rendered him ineligible to return to his former position - the arbitrator again acted within his authority by ordering Defendant to cease and desist from taking actions that, in the arbitrator's view, amounted to an "attempted end run around" his initial award of reinstatement without back pay. (Dkt. 1, Complaint, Ex. C, 4/30/2018 Arbitration Order at 1.)
Next, Defendant has filed a cross-motion for summary judgment, arguing that it is entitled as a matter of law to an order vacating the arbitration awards to the extent that the arbitrator seeks to override the revocation of PPO Bailey's security clearance or require that this officer be returned to his former position without the requisite security clearance. In support of this motion, Defendant asserts that nothing in the CBA confers authority on the arbitrator to review a decision by the Chief Postal Inspector to revoke a security clearance. Relatedly, Defendant contends that nothing in the CBA reflects its agreement to arbitrate the question whether an security clearance should be issued or maintained. Accordingly, Defendant submits that the arbitrator acted outside of his authority when he attempted to override the revocation of PPO Bailey's security clearance, and that this order therefore must be vacated.
On October 11, 2018, the Court heard oral argument on the parties' cross-motions. For the reasons set forth below, the Court GRANTS Plaintiff's motion to confirm the arbitration awards and for summary judgment on Defendant's counterclaim, and DENIES Defendant's cross-motion to vacate portions of the arbitrator's awards.
II. FACTUAL AND PROCEDURAL BACKGROUND
A. The Facts Underlying the Arbitrator's Awards
Postal Police Officer ("PPO") Geoff Bailey served as a police officer for the Defendant *1140 United States Postal Service, and was based in Detroit. In January of 2014, a man crashed a rented U-Haul van into the lobby of a post office branch in downtown Detroit, and PPO Bailey and another officer, PPO Michael Jefferson, were dispatched to the scene. PPO Jefferson prepared a report of the incident, and the driver of the van was charged with a federal crime.
In December of 2015, PPO Bailey applied for a promotion to a supervisory position. In support of this application, PPO Bailey cited the January 2014 incident report as an example of his ability to communicate in writing. About a month later, an Assistant United States Attorney ("AUSA") interviewed PPO Bailey in preparation for the forthcoming trial of the U-Haul driver, and PPO Bailey stated that he had not, in fact, completed a report of the January 2014 incident. Rather, he explained that he had started to prepare a report, but then had deleted this draft upon learning that PPO Jefferson had already completed an incident report.
Based on the apparent misstatement in PPO Bailey's application for a promotion, Defendant commenced an investigation through the Office of the Inspector General ("OIG"), and the officer was placed on administrative leave. Two OIG agents interviewed PPO Bailey in June of 2016, and he stated (i) that he could not remember whether or not he wrote a report of the January 2014 incident, and (ii) that he "would have to check the record" to determine whether he had prepared such a report. (Complaint, Ex. B, 3/19/2018 Arbitration Award at 7.)
On March 10, 2017, Defendant issued a notice of removal, advising PPO Bailey that he would be discharged effective April 10, 2017 for making an intentional misrepresentation on his application for a promotion, and for making false statements during the June 2016 OIG interview. In response, the Plaintiff Postal Police Officers Association filed a grievance on behalf of PPO Bailey challenging Defendant's decision to discharge him.
B. The Arbitration Proceedings and Awards
When the parties failed to resolve the grievance arising from PPO Bailey's discharge, the matter proceeded to arbitration. After two days of hearings, arbitrator E. Frank Cornelius issued his decision on March 19, 2018. The arbitrator found that Defendant failed to establish the first ground for PPO Bailey's discharge - i.e. , that the officer had made an intentional misstatement in his application for a promotion - but he upheld Defendant's determination that PPO Bailey had provided false information during his OIG interview. The arbitrator then concluded that discharge was too severe a penalty for PPO Bailey's violation, and that the officer instead should be reinstated without back pay - a determination tantamount to a one-year suspension without pay. At the conclusion of his decision, the arbitrator stated that he would retain jurisdiction in order to address any issues regarding the implementation of his award.
Following this arbitration award, Defendant immediately placed PPO Bailey on administrative leave and directed him not to report to work. Shortly thereafter, Defendant notified PPO Bailey in an April 6, 2018 letter that in light of the OIG investigation, the agency had determined that he "no longer me[ ]t the security requirements of the position" of postal police officer. (4/30/2018 Arbitration Order at 2.) In a subsequent April 16, 2018 letter to the Inspector in Charge at the Detroit Post Office, Defendant further explained that PPO Bailey's security clearance had been revoked as a result of his intentional false *1141 statements during the OIG investigation, and this letter expressly cited the arbitrator's March 19 decision as support for this determination. (Id. at 2-3.) PPO Bailey was advised that he could appeal the revocation of his security clearance to the Inspector in Charge, but this appeal was denied in a letter dated June 21, 2018. (See Dkt. 16, Defendant's Cross-Motion for Summary Judgment, Ex. 3.)
In response to Defendant's revocation of PPO Bailey's security clearance, Plaintiff returned to the arbitrator and requested assistance in implementing his March 19 award of reinstatement without back pay. In Plaintiff's view, Defendant was bound under the parties' collective bargaining agreement to abide by the arbitrator's award, and was improperly seeking to circumvent that award by revoking PPO Bailey's security clearance as a means to prevent his reinstatement.
On April 30, 2018, the arbitrator issued an order reaffirming his earlier award and ordering Defendant to "cease and desist its attempted end run around the award and the collective bargaining agreement." (4/30/2018 Arbitration Order at 1.) As support for this decision, the arbitrator observed that Defendant had not argued in the initial arbitration proceeding that PPO Bailey was a security risk, and he found that Defendant was precluded under the "doctrine of industrial double jeopardy" and principles of collateral estoppel from raising this issue after he had reached a "final decision on the merits" as to the propriety of PPO Bailey's discharge. (Id. at 8.) The arbitrator further reasoned that the term "reinstatement" as used in the parties' collective bargaining agreement had a common and accepted meaning, and he determined that Defendant had failed to comply with his reinstatement award by placing PPO Bailey on administrative leave rather than restoring him to his prior position as a postal police officer. (Id. at 9-10.)
According to Plaintiff, Defendant has continued to refuse to comply with the arbitrator's award of reinstatement. In particular, the president of the Plaintiff labor organization, James Bjork, states in an affidavit that after the arbitrator issued his April 30 order, PPO Bailey has been (i) required to "report to his job location each 'work day' " and "sign-in each day as a building visitor," and then (ii) led by an armed escort "to a nearly empty, windowless office where he was required to sit for eight hours/day" without "performing any duties whatsoever." (Dkt. 12, James Bjork 7/17/2018 Decl. at ¶ 6.) More recently, Defendant advised PPO Bailey that as of July 16, 2018, he should no longer come to the office, but instead should " 'report in' by telephone." (Id. at ¶ 7.)
C. The Relevant Terms of the Parties' Collective Bargaining Agreement
The collective bargaining agreement ("CBA") between the Plaintiff labor organization and Defendant establishes a multi-step procedure for handling employee grievances. (See Complaint, Ex. A, CBA art. 15.) If a grievance is not resolved at the earlier stages of this process, a party may submit a request for arbitration, and "[t]he arbitrator's decision shall be final and binding." (CBA § 15.05(b).) Similarly, "[a]ny dispute as to arbitrability may be submitted to the arbitrator and be determined by the arbitrator," and "[t]hat determination shall be final and binding." (CBA § 15.05(e).) The CBA emphasizes, however, that "[a]ll decisions of the arbitrator shall be limited to the terms and provisions of this Agreement, and in no event may the terms and provisions of this Agreement be altered, amended, or modified by the arbitrator." (CBA § 15.05(b).)
*1142 The CBA provides that "[n]o PPO may be disciplined or discharged except for just cause." (CBA § 16.01.) Moreover, "[a]ny such discipline or discharge shall be subject to the Grievance-Arbitration Procedure provided for in [the CBA], which could result in reinstatement and restitution, including back pay." (Id. )
To the extent that Defendant has issued "handbooks, manuals [or] published regulations" that "directly relate to wages, hours or working conditions," the CBA states that any terms in these documents or regulations that "apply to PPOs covered by this Agreement[ ] shall contain nothing that conflicts with this Agreement and shall be continued in effect." (CBA § 19.01.) In addition, Defendant has "the right to make changes" to these extrinsic materials, but only to the extent that these revisions "are not inconsistent with this Agreement and ... are fair, reasonable, and equitable." (Id. )
III. STANDARD OF REVIEW
In the first of the two motions pending before the Court, the Plaintiff labor organization asks the Court to confirm the arbitrator's March 19, 2018 award and subsequent April 30, 2018 order. As Plaintiff observes, arbitration of postal employee grievances is governed by 39 U.S.C. § 1206(b), which authorizes the Defendant Postal Service and bargaining representatives such as Plaintiff to enter into collective bargaining agreements that include "procedures for resolution by the parties of grievances and adverse actions arising under the agreement, including procedures culminating in binding third-party arbitration." The Sixth Circuit has explained that Congress enacted this and other provisions of the Postal Reorganization Act ("PRA") in order to "bring postal labor relations within the same structure that exists for nationwide enterprises in the private sector." Malone v. United States Postal Service , 526 F.2d 1099, 1103-04 (6th Cir. 1975) (internal quotation marks and citation omitted). Accordingly, the courts have applied the case law arising under the analogous provisions of the Labor Management Relations Act ("LMRA") - including, most notably, § 301(a) of the LMRA, 29 U.S.C. § 185(a) - in addressing suits to enforce collective bargaining agreements between the United States Postal Service and labor organizations representing postal employees. See Lawson v. Truck Drivers, Chauffeurs & Helpers, Local Union 100 , 698 F.2d 250, 255 (6th Cir. 1983).
Of particular relevance here, in determining whether the arbitration awards identified by Plaintiff should be enforced, the Court is guided by the standards adopted in analogous cases decided under § 301 of the LMRA. See Pittsburgh Metro Area Postal Workers Union v. United States Postal Service , 938 F.Supp.2d 555, 558 (W.D. Pa. 2013). The Sixth Circuit has emphasized that this task is governed by "one of the narrowest standards of judicial review in all of American jurisprudence." Lattimer-Stevens Co. v. United Steelworkers of America, AFL-CIO, District 27, Sub-District 5 , 913 F.2d 1166, 1169 (6th Cir. 1990). "Because the parties have contracted to have disputes settled by an arbitrator chosen by them rather than by a judge, it is the arbitrator's view of the facts and of the meaning of the contract that they have agreed to accept." United Paperworkers International Union, AFL-CIO v. Misco, Inc. , 484 U.S. 29, 37-38, 108 S.Ct. 364, 370, 98 L.Ed.2d 286 (1987). Thus, "the courts are not authorized to reconsider the merits of an [arbitrator's] award," and "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does *1143 not suffice to overturn his decision." Misco , 484 U.S. at 36, 38, 108 S.Ct. at 370-71.
As for Defendant's cross-motion, Defendant argues in this motion that the arbitrator's award and subsequent order must be vacated to the extent that they purport to override the revocation of PPO Bailey's security clearance or direct Defendant to reinstate this officer to his former position without the requisite security clearance. In Defendant's view, the grounds for vacating this aspect of the arbitrator's decisions are established as a matter of law, and the Court therefore may award summary judgment in Defendant's favor on its counterclaim to vacate the relevant portions of the arbitrator's award and order. This cross-motion is governed by the familiar standards of Fed. R. Civ. P. 56(a), under which summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The parties here agree upon all of the material facts bearing on their dispute, so it remains only to determine which party should prevail under the legal standards governing the Court's review of the arbitrator's decisions.
IV. ANALYSIS
As the parties recognize in their briefing on their cross-motions, a number of matters are not in dispute here. First, Defendant acknowledges that "the arbitrator had authority to resolve the grievance over PPO Bailey's misconduct," and to order this officer's reinstatement as relief from a penalty that the arbitrator deemed too severe. (Dkt. 17, Defendant's Response Br. at 1.) In addition, Defendant states that it "does not rely on public policy arguments to demonstrate [that] the arbitrator's award is invalid." (Id. ) Rather, the parties' disagreement is focused on the arbitrator's decision in a supplemental April 30, 2018 order to view Defendant's post-arbitration revocation of PPO Bailey's security clearance as an "attempted end run around" the arbitrator's initial award of reinstatement. (4/30/2018 Arbitration Order at 1.) This disagreement, in turn, leaves two legal issues for the Court to resolve: (i) whether the parties' disagreement about the arbitrator's supplemental order is a dispute over arbitrability that itself was committed to the arbitrator for his final and binding resolution, and (ii) whether the arbitrator acted within the scope of the authority conferred by the parties' CBA in issuing his supplemental order. Each of these issues is addressed in turn below.
A. The Arbitrator's Supplemental April 30, 2018 Order Incorporates a Decision on Arbitrability That the Arbitrator Was Authorized to Render Under the Terms of the Parties' Collective Bargaining Agreement.
1. The Parties' Positions
As Plaintiff observes, parties may agree by contract not only to arbitrate disputes that arise under the contract, but also to arbitrate disputes over arbitrability - that is, questions about the scope of an arbitrator's authority to resolve a given dispute. The CBA at issue here plainly reflects such an agreement, providing that "[a]ny dispute as to arbitrability may be submitted to the arbitrator and be determined by the arbitrator," and that such "determination[s] shall be final and binding." (CBA § 15.05(e).) In Plaintiff's view, the question of the arbitrator's authority to issue his supplemental April 30, 2018 order was submitted for determination by the arbitrator himself in accordance with this CBA provision, by virtue of Defendant's election to argue before the arbitrator that the revocation of PPO Bailey's security clearance was not arbitrable. Given the parties'
*1144 agreement to arbitrate the issue of arbitrability, Plaintiff contends that the arbitrator's decision on the scope of his authority to issue his supplemental order is final and binding on the parties, and may not be disturbed by the Court except under the very narrow standard set forth earlier for overturning an arbitrator's decision.
In response, Defendant insists that it "never agreed" that the arbitrator had the authority to resolve any question as to the revocation of PPO Bailey's security clearance. (Defendant's Response Br. at 21.) Rather, it maintains that it "only agreed to arbitration to resolve PPO Bailey's grievance for his removal based on his misconduct." (Id. ) In Defendant's view, the arbitrator exceeded this mandate by reaching out to address a security clearance determination that occurred after, and wholly separate from, the decision to discharge PPO Bailey for misconduct. To be sure, Defendant acknowledges that it argued before the arbitrator that "the issue of revocation of PPO Bailey's security clearance was outside the scope of the Arbitration award and not before the Arbitrator." (Id. (internal quotation marks and citation omitted).) Yet, it denies that this argument operated as an assent to the arbitrator's authority to determine the arbitrability of the parties' dispute over the revocation of PPO Bailey's security clearance. Nor does Defendant accept that by making this argument, it waived its opportunity to seek anything but the most deferential judicial review of the arbitrator's decision in his supplemental order to address (and overturn) Defendant's revocation of PPO Bailey's security clearance.
2. Applicable Law
As explained by the Supreme Court, "[j]ust as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute, so the question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about that matter." First Options of Chicago, Inc. v. Kaplan , 514 U.S. 938, 943, 115 S.Ct. 1920, 1923, 131 L.Ed.2d 985 (1995) (citations omitted) (emphasis in original). If "the parties agree to submit the arbitrability question itself to arbitration," then the courts must "give considerable leeway" to the arbitrator's resolution of this issue, and may overturn this decision "only in certain narrow circumstances." First Options , 514 U.S. at 943, 115 S.Ct. at 1923. "When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally ... should apply ordinary state-law principles that govern the formation of contracts." 514 U.S. at 944, 115 S.Ct. at 1924.
3. By Electing to Challenge the Arbitrator's Authority to Address the Revocation of PPO Bailey's Security Clearance, Defendant Raised an Issue of Arbitrability that the Arbitrator Resolved in a Final and Binding Decision.
As noted earlier, the issues that the Court must decide here are limited. The principal point of disagreement between the parties concerns the authority of arbitrator E. Frank Cornelius to issue his April 30, 2018 order. In this order, the arbitrator (i) found that Defendant had "failed and refused" to comply with the arbitrator's earlier March 19, 2018 award, in which Defendant was ordered to reinstate PPO Bailey without back pay, and (ii) directed Defendant to "cease and desist its attempted end run around the [March 19] award and the collective bargaining agreement" through its decision to revoke PPO Bailey's security clearance. (4/30/2018 Arbitration Order at 1.) Yet, before the Court may inquire into the arbitrator's authority to issue the April 30 order, it first must *1145 resolve a threshold question raised and debated by the parties: namely, whether the parties agreed that this issue of arbitrability itself was to be resolved by the arbitrator in the first instance. If so, the narrow standard that governs this Court's review of the arbitrator's award and order would apply as well to the arbitrator's determination that he was authorized under the CBA to grant the relief set forth in his April 30 order.
To resolve this threshold question, the Court begins with the language of the CBA itself. This inquiry is straightforward, because the CBA expressly provides that "[a]ny dispute as to arbitrability may be submitted to the arbitrator and be determined by the arbitrator." (CBA § 15.05(e).) Through this provision, the parties plainly agreed that they "may" submit the issue of arbitrability to the arbitrator. It remains only to ask whether they actually elected to do so in this case.
This question likewise is easily resolved. The Plaintiff labor representative obviously believed that the arbitrator had the authority to address Defendant's alleged lack of compliance with the March 19 award of reinstatement, given that it returned to the arbitrator and "request[ed] his assistance in implementation of the award." (4/30/2018 Arbitration Order at 3.) Moreover, as Plaintiff pursued this course of action, it was fully aware of Defendant's position that its post-arbitration decision to revoke PPO Bailey's security clearance was not a matter that the parties had agreed to arbitrate. Plaintiff expressly disagreed with this contention, stating in a submission to the arbitrator that if Defendant wished to remove this matter from the arbitrator's purview, "it could have bargained for that in the CBA." (Id. at 6.) Under this record, it is clear that Plaintiff invited the arbitrator to decide the question of arbitrability at issue here: namely, whether the arbitrator had the authority to address Defendant's decision to revoke PPO Bailey's security clearance.
It is equally evident that Defendant did so. In response to Plaintiff's request that the arbitrator take action to implement his March 19 award, Defendant submitted an April 23, 2018 letter to the arbitrator stating, in pertinent part, that Plaintiff's challenge to the revocation of PPO Bailey's security clearance was "outside the scope of the Arbitration award" and was not properly "before the Arbitrator." (Defendant's Response, Ex. 4, Defendant's 4/23/2018 Statement at 2, 3.) Indeed, Defendant expressly points to these excerpts of its April 23 letter to refute an argument that it views Plaintiff as making in its motion - i.e. , that Defendant waived its arbitrability challenge by failing to "raise the issue of the arbitrator's lack of authority to address security clearance determinations during arbitration." (Defendant's Response Br. at 21.) Regardless of whether Defendant addressed this issue of arbitrability willingly, or out of a belief that it should or must do so in response to Plaintiff's argument on this subject, it nonetheless submitted a statement to the arbitrator setting forth its position on a "dispute as to arbitrability," (CBA § 15.05(e) ). Under the CBA, the submission of this issue by the parties empowered the arbitrator to resolve this issue, and the arbitrator's determination on this point was deemed "final and binding." (Id.)
To be sure, the Supreme Court has recognized that "merely arguing the arbitrability issue to an arbitrator does not indicate a clear willingness to arbitrate that issue, i.e. , a willingness to be effectively bound by the arbitrator's decision on that point." First Options , 514 U.S. at 946, 115 S.Ct. at 1925. More generally, the Court has cautioned that "[c]ourts should not assume that the parties agreed to arbitrate *1146 arbitrability unless there is clear and unmistakable evidence that they did so." 514 U.S. at 944, 115 S.Ct. at 1924 (internal quotation marks, alterations, and citations omitted). In this case, however, the parties entered into an agreement, the CBA, that expressly allows for questions of arbitrability to be heard and resolved by an arbitrator. See Amway Global v. Woodward , 744 F.Supp.2d 657, 664 (E.D. Mich. 2010) ("[W]here parties have included language in their arbitration agreement authorizing the arbitrator to decide issues of arbitrability, the courts have held that such a provision serves as the requisite 'clear and unmistakable evidence' under First Options that the parties agreed to arbitrate arbitrability." (collecting cases) ). Although this CBA provision is permissive, and not mandatory, the arguments advanced by the parties in their submissions to the arbitrator evidenced their understanding that the arbitrator would - or, at the very least, could - address the issue of arbitrability as he decided whether to grant Plaintiff's request for assistance in implementing the arbitrator's March 19 award. See Amway Global , 744 F.Supp.2d at 664-65 (finding that permissive language in the arbitration agreement in that case was sufficient to demonstrate the parties' intent to authorize the arbitrator to decide issues of arbitrability).
Because the parties agreed to submit their arbitrability dispute to the arbitrator, and because the arbitrator's decision on this issue is deemed "final and binding" under the CBA, this decision "is entitled to a deferential review." Cleveland Electric Illuminating Co. v. Utility Workers Union of America, Local 270 , 440 F.3d 809, 814 (6th Cir. 2006) ; see also First Options , 514 U.S. at 943, 115 S.Ct. at 1924 (holding that "a court must defer to an arbitrator's arbitrability decision when the parties submitted that matter to arbitration"). Under this deferential standard, "[t]he arbitrator's decision will not be disturbed unless if fails to draw its essence from the collective bargaining agreement." Cleveland Electric , 440 F.3d at 814 (internal quotation marks and citations omitted).
In its submissions to the Court, Defendant has not truly endeavored to explain how the arbitrator's decision on arbitrability could be set aside under the deferential standard that governs the Court's review of this decision. In an opinion accompanying his April 30 order, the arbitrator observed that his March 19 award included language expressly retaining his "jurisdiction regarding implementation of the award." (4/30/2018 Arbitration Order at 2 (internal quotation marks omitted).) The arbitrator then referenced a letter he received from Plaintiff's counsel "requesting his assistance in implementation of the [March 19] award," and he characterized this letter as raising "implementation issues" that he then proceeded to address and resolve. (Id. at 2-3.) In the course of this decision, the arbitrator acknowledged Defendant's position that the revocation of PPO Bailey's security clearance was not a matter within the scope of the dispute presented for the arbitrator's determination. (See id. at 5.) Nonetheless, the arbitrator elected to reach this issue, finding that Defendant had improperly revoked PPO Bailey's security clearance as a means to avoid complying with his March 19 award. (See id. at 8-11.)
As confirmed by Sixth Circuit precedent, the arbitrator plainly had the authority to ensure that the parties complied with and implemented his March 19 award. See Totes Isotoner Corp. v. International Chemical Workers Union Council/UFCW Local 664C , 532 F.3d 405, 413 (6th Cir. 2008) (citing prior Sixth Circuit and district court decisions as "stand[ing] for the proposition that a supplemental *1147 award 'arguably construes' a collective bargaining agreement where the supplemental award seeks to clarify or enforce an original award that interpreted the relevant agreement"). Indeed, such a grant of authority arises implicitly from the parties' agreement to resolve their disputes through final and binding arbitration. See International Association of Machinists & Aerospace Workers v. Tennessee Valley Authority , 155 F.3d 767, 772 (6th Cir. 1998). Although Defendant disagrees with the substance of the arbitrator's determination of what "implementation" of his March 19 award entailed - a question to which the Court turns below - it fails to suggest how the arbitrator's threshold decision to reach issues of implementation in his April 30 order did not draw its essence from the CBA. Accordingly, to the extent that the arbitrator resolved questions of arbitrability in his April 30 order, the arbitrator's decisions on these matters were final and binding on the parties, and Defendant has not identified a basis for the Court to set aside these determinations under the deferential standard that governs this inquiry.
B. The Arbitrator's Substantive Rulings in His April 30 Order Withstand Scrutiny Under the Deferential Standard of Review that Governs Here.
1. The Parties' Positions
Having resolved the question whether the arbitrator was authorized to decide the threshold issue of arbitrability in his April 30 order, the Court turns to the substance of the arbitrator's rulings in that order. In Plaintiff's view, the Court's inquiry is at an end once it concludes, as it should, that the arbitrator's substantive rulings were a product of the authority conferred under the CBA. As Plaintiff observes, the CBA provides that disciplinary action and discharge are subject to a grievance procedure, including arbitration, and it authorizes the arbitrator to award the relief of reinstatement. It follows, according to Plaintiff, that once the arbitrator ordered the reinstatement of PPO Bailey, he was entitled to determine whether Defendant had complied with this award. Plaintiff further contends that this authority encompassed the power to review Defendant's revocation of PPO Bailey's security clearance, where the arbitrator deemed it necessary to do so in order to implement his order of reinstatement.
In response, Defendant largely reiterates its assertion that the arbitrator exceeded his authority under the CBA by reaching out to address a security clearance determination that occurred after, and wholly separate from, the decision to discharge PPO Bailey for misconduct. According to Defendant, security clearance determinations are governed by provisions in an Administrative Support Manual ("ASM") that vest the Chief Postal Inspector with the sole authority to revoke a security clearance. Defendant further points to language in the CBA that incorporates by reference the ASM and other handbooks, manuals, and Postal Service regulations, except to the extent that the terms of these materials conflict with the CBA. In Defendant's view, nothing in the CBA conflicts with or overrides the authority of the Chief Postal Inspector to revoke a security clearance, and it follows that the arbitrator acted outside the scope of his authority under the CBA by purporting to set aside the decision to revoke PPO Bailey's security clearance.
2. Applicable Law
As stated earlier, Defendant's challenge to the arbitrator's March 19, 2018 award and subsequent April 30, 2018 order is governed by "one of the narrowest standards of judicial review in all of American *1148 jurisprudence." Lattimer-Stevens , 913 F.2d at 1169. Specifically, "the courts are not authorized to reconsider the merits of an [arbitrator's] award," and "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." Misco , 484 U.S. at 36, 38, 108 S.Ct. at 370-71. Regarding the "scope of authority" prong of this inquiry, the Court has already determined that the parties empowered the arbitrator to decide this question of arbitrability, and that Defendant has failed to identify any basis for overturning the arbitrator's final and binding decision on this point. Accordingly, the sole remaining issue is whether the arbitrator's award and order draw their essence from the CBA, or instead reflect the arbitrator's attempt to "dispense his own brand of industrial justice." Brotherhood of Locomotive Engineers & Trainmen v. United Transportation Union , 700 F.3d 891, 900 (6th Cir. 2012) (internal quotation marks, alteration, and citation omitted).[1]
As the Sixth Circuit has explained, an arbitrator's decision "draws its essence" from the parties' contract so long as the arbitrator was "arguably construing or applying the contract." Michigan Family Resources, Inc. v. Service Employees International Union Local 517M , 475 F.3d 746, 752 (6th Cir. 2007) (internal quotation marks and citations omitted). "[I]n most cases, it will suffice to enforce the award that the arbitrator appeared to be engaged in interpretation, and if there is doubt [the courts] will presume that the arbitrator was doing just that." Michigan Family Resources , 475 F.3d at 753. In "the rare case," however, an arbitrator's decision may be "so ignorant of the contract's plain language" or "so untethered to the terms of the agreement" as to "make implausible any contention that the arbitrator was construing the contract." 475 F.3d at 753 (internal quotation marks, alteration, and citations omitted). The Sixth Circuit has emphasized that "[t]his view of the 'arguably construing' inquiry no doubt will permit only the most egregious awards to be vacated." 475 F.3d at 753.
3. The Arbitrator's April 30 Order Draws Its Essence from the Collective Bargaining Agreement, and Thus Is Entitled to Enforcement.
The parties agree that under their CBA, the arbitrator was granted the authority to hear and resolve Plaintiff's challenge to the discharge of PPO Bailey, and to award the relief of reinstatement as he deemed appropriate. They part ways, however, in their understandings of the arbitrator's supplemental April 30, 2018 order. In Plaintiff's view, the arbitrator did no more than exercise the jurisdiction he retained to ensure that his March 19, 2018 award was implemented, and he then determined, upon invoking this jurisdiction, that Defendant had not complied with the order of reinstatement set forth in his March 19 award. Defendant, in contrast, contends that the arbitrator reached out in his April 30 order to address a new development - i.e. , the revocation of PPO Bailey's security clearance - that was (i) separate and independent from the matters brought before the arbitrator, and (ii) the product of an exercise of authority by the Chief Postal Inspector that the arbitrator *1149 was powerless to review or overturn.
As observed by Plaintiff, the arbitrator's April 30 order certainly appears on its face to be the product of contract interpretation. As stated in that order, when Plaintiff's counsel wrote to the arbitrator "requesting his assistance in implementation of the [March 19] award," Plaintiff characterized the parties' dispute as "concern[ing] [Defendant's] refusal to reinstate [PPO] Bailey to his position." (4/30/2018 Arbitration Order at 3.) Defendant advanced a similar view of the parties' dispute, stating in a submission to the arbitrator that "the parties disagree ... on the definition of 'reinstated,' " and discussing a case that purportedly bolstered its contention that PPO Bailey had in fact been reinstated. (Defendant's Response, Ex. 4, Defendant's 4/23/2018 Statement at 1-2.) In keeping with this shared understanding of the issue before him, the arbitrator proceeded to consider whether PPO Bailey had been reinstated as that term is used in the CBA, and he answered this question in the negative. (4/30/2018 Arbitration Order at 9-10.) To be sure, the arbitrator identified other grounds for his decision, including the doctrines of issue preclusion and industrial double jeopardy. (See id. at 8-9.) Yet, even assuming the arbitrator could be viewed as straying beyond his authority under the CBA by invoking these procedural doctrines - an assertion Defendant notably does not make, and for which there is no evident support in the case law - his April 30 order plainly rests in part on his interpretation of "reinstatement" as this term is used in the CBA, and this suffices to establish that his order drew its essence from the parties' contract.
The arbitrator's April 30 order also is entitled to enforcement as an appropriate exercise of his authority to see that his earlier March 19, 2018 award was properly implemented. As discussed earlier, the Sixth Circuit has recognized that a supplemental award, such as the April 30 order at issue here, " 'arguably construes' a collective bargaining agreement where the supplemental award seeks to clarify or enforce an original award that interpreted the relevant agreement." Totes Isotoner Corp. , 532 F.3d at 413 ; see also International Association of Machinists , 155 F.3d at 772 (holding that an arbitrator acted within the scope of its authority by issuing a supplemental award that served as "an enforcement of the [arbitrator's] initial resolution" of the issue in dispute). There is no dispute here that the arbitrator's initial March 19 award appropriately rested upon an interpretation of the parties' CBA. Hence, his April 30 order enforcing this award in the face of Defendant's alleged non-compliance likewise drew its essence from the CBA.
Defendant seeks to avoid this result on two grounds, but neither is persuasive. First, although Defendant acknowledges that the arbitrator was empowered to address the issue of reinstatement, it argues that the CBA carves out security clearances as a matter that is committed to the sole discretion of the Chief Postal Inspector, and thus lies beyond the authority granted to the arbitrator. In particular, Defendant points to a provision in its Administrative Support Manual ("ASM") stating that "[t]he Chief Postal Inspector or designee is responsible for the adjudication of all security clearances and suitability background investigations for Postal Service Personnel." (Dkt. 16, Defendant's Cross-Motion for Summary Judgment, Ex. 1, ASM § 272.12.) Under another ASM provision, an employee "may request reconsideration of the denial of a clearance by sending a letter with supporting documentation to the Inspector in Charge Security and Crime Prevention Group." (ASM § 272.33.) Thus, the ASM both (i)
*1150 confers authority upon the Chief Postal Inspector to grant, deny, or revoke security clearances, and (ii) provides a mechanism for administrative review of any decision to deny a security clearance.[2]
In Defendant's view, the parties' CBA incorporates these provisions of the ASM, and thereby precludes arbitration of disputes arising from the revocation of an employee's security clearance. Specifically, the CBA evidences the parties' agreement to give "continued ... effect" to "[t]hose parts of all handbooks, manuals and published regulations of the Postal Service that directly relate to wages, hours or working conditions, as they apply to PPOs covered by this Agreement." (CBA § 19.01.) Defendant argues that "[b]ecause the CBA, through the ASM, reserves security clearance determinations to the Chief Postal Inspector, PPO Bailey does not have a 'right' to a security clearance under the CBA, and it falls outside the scope of a grievable issue." (Defendant's Cross-Motion for Summary Judgment, Br. in Support at 12.)[3]
As Plaintiff observes in response, however, the CBA gives "continued ... effect" to the ASM and other handbooks, manuals, and regulations only to the extent that they "contain nothing that conflicts with this Agreement." (CBA § 19.01.) Similarly, Plaintiff points to a provision in the PRA stating that Postal Service officers and employees are subject to various civil service laws - including a statute authorizing the revocation of security clearances, see 5 U.S.C. § 7532 - "except to the extent of any inconsistency with ... the provisions of any collective-bargaining agreement negotiated on behalf of and applicable to them." 39 U.S.C. § 1005(a)(1)(A). It follows that the arbitrator was not necessarily precluded from addressing Defendant's revocation of PPO Bailey's security clearance, but instead could do so if the powers invoked by Defendant to make this determination conflicted with its obligations under the CBA.
This inquiry, of course, implicates matters of CBA interpretation that the parties agreed to entrust to the arbitrator. Specifically, Plaintiff challenged the discharge of PPO Bailey as lacking the "just cause" basis demanded under the CBA, and as also violating the CBA's mandate that "discipline should be corrective in nature, rather than punitive." (CBA § 16.01.) The arbitrator agreed in part, upholding one of the two charges against PPO Bailey, but determining that discharge was "unduly harsh" in light of this single violation and instead ordering PPO Bailey's reinstatement without back pay. (3/19/2018 Arbitration Award at 23.) Then, when Defendant subsequently revoked PPO Bailey's security clearance, Plaintiff submitted a letter to the arbitrator arguing, among other things, (i) that Defendant was "bound contractually to abide by the just-cause clause and arbitral review of its decisions," (ii) that these obligations encompassed the entirety *1151 of the Defendant agency, including its security functions, and (iii) that Defendant could not "get around the CBA by having [its] security department declare that [Defendant] is exempt from reinstatement orders flowing from the CBA," as this would "render the CBA a nullity." (4/30/2018 Arbitration Order at 6.) In his April 30 order, the arbitrator expressly adopted Plaintiff's positions on these points. (Id. at 5 (stating that "[b]ecause the arbitrator endorses [Plaintiff's] arguments, they are set forth in full") ).
Accordingly, the arbitrator was at least arguably construing the CBA when he ordered Defendant to "cease and desist from its efforts to avoid compliance with the arbitrator's award of March 19, 2018," (id. at 11), and this suffices to satisfy the deferential standard governing the Court's review of this order. Much as Defendant might disagree with the arbitrator's reading of such CBA terms as "just cause," "reinstatement," and "corrective discipline," the Court is not at liberty to address the merits of the arbitrator's efforts at contract interpretation, so long as they are sufficiently tethered to the language of the CBA. See Michigan Family Resources , 475 F.3d at 753.
Next, Defendant suggests that the decision to revoke PPO Bailey's security clearance was separate and independent from the dispute giving rise to Plaintiff's grievance on behalf of this officer, such that the arbitrator could not address this decision without exceeding his authority to resolve only the dispute brought before him in Plaintiff's grievance. In Defendant's view, while it was obligated under the arbitrator's March 19 award to reinstate PPO Bailey, nothing in that decision prevented it from exercising its wholly separate power to determine whether an employee had engaged in conduct that warranted the revocation of his security clearance. Defendant then points to case law drawing a distinction between matters within the scope of arbitration and subsequent or otherwise separate developments that lie outside the authority of the arbitrator to address. See, e.g. , Totes Isotoner Corp. , 532 F.3d at 415 ; Hughes Aircraft Co. v. Electronic & Space Technicians, Local 1553 , 822 F.2d 823, 827 (9th Cir. 1987) ; Detroit & Midwestern States Joint Board, Amalgamated Clothing Workers of America v. White Tower Laundry & Cleaners , 353 F.Supp. 168, 169-70 (E.D. Mich. 1973).
As a threshold matter, however, this argument amounts to a challenge to the arbitrability of Defendant's decision to revoke PPO Bailey's security clearance in the wake of the arbitrator's March 19 award of reinstatement. As already discussed, the parties presented this question of arbitrability for resolution by the arbitrator, and his decision on this issue withstands the limited and deferential review to which it is subject.
Moreover, the cases cited by Defendant are distinguishable. In Totes Isotoner Corp. , 532 F.3d at 416, for example, the court held that the arbitrator had "acted outside of his authority" when he addressed a question arising under a wholly separate agreement from the CBA he had construed in issuing an earlier award. Similarly, in Hughes Aircraft , 822 F.2d at 827, the employee who was the subject of an initial grievance had been promoted twice since the employment action giving rise to the grievance. Because "these subsequent promotions [we]re the subject of other independent pending grievances," the court held that the arbitrator lacked the authority to address these subsequent developments as part of his resolution of the initial grievance. 822 F.2d at 827.
Although Defendant points to the revocation of PPO Bailey's security clearance as a similar "subsequent development"
*1152 that the arbitrator lacked the authority to address, the record indicates otherwise. PPO Bailey's security clearance was not revoked on the basis of any action he took after the events giving rise to Plaintiff's grievance on his behalf. To the contrary, Defendant specifically cited the arbitrator's findings in his March 19, 2018 decision as support for its determination that PPO Bailey's security clearance should be revoked. (See 4/30/2018 Arbitration Order at 3.) Thus, the only "subsequent development" here was Defendant's decision, following the arbitrator's award of reinstatement, to rely upon PPO Bailey's past conduct as a basis for revoking his security clearance.
Because the arbitrator did not purport to address new facts outside the four corners of the grievance brought before him, he did not exceed his authority by accounting for new actions taken by Defendant that he perceived, in accordance with his interpretation of the CBA, as an "attempted end run around" his March 19, 2018 award of reinstatement. To hold otherwise would permit Defendant to exercise a veto over the arbitrator's handling of an employee grievance and order of reinstatement by adopting a new, post-arbitration ground for the employment decision addressed in the grievance and arbitration proceedings. Under both the parties' CBA and the relevant law, the arbitrator was authorized to issue an order ensuring the implementation of his award of reinstatement. It follows that Plaintiff is entitled to an order confirming the arbitrator's March 19, 2018 award and subsequent April 30, 2018 order, and that Defendant's counterclaim seeking to vacate in part the arbitrator's award and order is subject to dismissal.
V. CONCLUSION
For these reasons, the Court GRANTS Plaintiff's July 18, 2018 motion for order confirming arbitration award and for summary judgment (Dkt. 11), and DENIES Defendant's August 8, 2018 cross-motion for summary judgment (Dkt. 16).
IT IS SO ORDERED.

An arbitrator's decision also can be overturned if the arbitrator "committed fraud, had a conflict of interest, or otherwise acted dishonestly in issuing the award." Brotherhood of Locomotive Engineers , 700 F.3d at 901. In this case, however, Defendant does not challenge the arbitrator's decision on any of these grounds.

The ASM further provides that if an employee is denied a security clearance, he must either be discharged or reassigned to duties that do not require this clearance. (ASM § 272.35.)

Despite its insistence that PPO Bailey cannot pursue a grievance to challenge the revocation of his security clearance, Defendant opines that two avenues of relief remain available to him. First, the ASM provides for administrative review of a decision to deny a security clearance. (See ASM § 272.33.) Next, in the event that PPO Bailey is discharged for failure to maintain the requisite security clearance, Defendant states that he could file a grievance challenging this discharge, but it submits that such a challenge would be limited to "due process issues, [and] not the merits of the decision" to revoke his security clearance. (Dkt. 20, Defendant's Reply Br. at 4 n.2.)